PUBLIC SERVICE COMMISSION OF INDIANA v. STATE
OF INDIANA, EX. REL. MERCHANTS HEAT
AND LIGHT COMPANY.

[No. 22,739. Filed January 14, 1916.]

1. PUBLIC SERVICE COMMISSION.—*Regulation of Public Utilities.*—
*Bond Issues.*—*Statutes.*—*Nature of Duties.*—Under §§88-92, Acts
1913 p. 167, §§10052j3-10052n3 Burns 1914, the Public Service
Commission is required to hear and determine the facts on the ap-
plication of a public utility to issue bonds or other evidence of in-
debtedness, and if the facts found entitle the utility to a certificate
of authority to issue such bonds or other evidences of indebtedness
in a given amount, the commission must issue such certificate;
and its duty to do so is ministerial. p. 277.

2. OFFICERS.—*Ministerial Duties.*—A duty is none the less minis-
terial because the person charged therewith may have to satisfy
himself of the existence of a state of facts warranting the perform-
ance of such duty. p. 278.

3. PUBLIC SERVICE COMMISSION.—*Regulation of Public Utilities.*—
*Findings on Application to Issue Bonds.*—*Mandamus.*—Where the
Public Service Commission, on the application of a lighting com-
pany for authority to issue bonds, found that the applicant had
made extensions and improvements and that the amount of bonds
reasonably necessary for the reimbursement of its treasury for ex-
penditures so made was equal to the amount for which applicant
sought to issue its bonds, the commission was required to authorize
the issue in the amount asked, in the absence of a finding that the
extensions and improvements did not represent a money value to
the utility of the full amount of their cost, and notwithstanding a
further finding that a part of such extensions constituted a dupli-
cation of instrumentalities existing and in use by another public
utility, and on the commission's refusal to issue a certificate author-
izing a bond issue in the amount prayed the petitioner could pro-
cure the issuance of such certificate by mandamus. pp. 278, 281.

4. PUBLIC SERVICE COMMISSION.—*Regulation of Public Utilities.*—
*Statutes.*—*Scope of Authority.*—While the act concerning public
utilities and creating the Public Service Commission (Acts 1913
p. 167, §10052a et seq. Burns 1914), evidences a legislative purpose
to prevent a waste of capital by competing utilities in the duplica-
tion of instrumentalities for the public service, the extent to which
such policy is to be carried is a question for the legislature and not
one for the Public Service Commission or the courts. p. 280.

5. PUBLIC SERVICE COMMISSION.—*Powers and Authority.*—The
Public Service Commission derives its authority from the law

which creates it and by which its powers are conferred and its duties imposed. p. 281.

6. PUBLIC SERVICE COMMISSION.—*Authorization of Bond Issues.*— *Mandamus.*—A public utility seeking authority from the Public Service Commission to issue bonds or other evidences of indebtedness to reimburse its treasury for expenditures made in extensions and improvements, is not precluded from relief by mandate on the refusal of the commission to authorize such issue, on the theory that §78 of the act relating to public utilities (Acts 1913 p. 167, §10052z2 Burns 1914) affords a right of appeal from an order of the commission, since such section does not include orders granting or refusing authority to issue and sell bonds. p. 282.

From Marion Circuit Court (24,433); *Charles Remster*, Judge.

Action by the State of Indiana, on the relation of the Merchants Heat and Light Company, against the Public Service Commission of Indiana. From a judgment for relator, the defendant appeals. *Affirmed.*

*Burt New*, for appellant.

*Charles McPherson, John B. Elam, J. W. Fesler, Harvey J. Elam* and *Howard S. Young*, for appellee.

LAIRY, J.—The relator is a public service corporation engaged in manufacturing and selling electricity for light and power in the city of Indianapolis and is operating under an indeterminate permit granted to it by the Public Service Commission upon the surrender of its franchise. Prior to the commencement of this suit, the relator applied to the Public Service Commission for authority to issue and sell bonds of the par value of $103,000 on account of additions and extensions made by it to enable it to perform a contract made with the city of Indianapolis for lighting streets and alleys. At the time relator entered into this contract with the city, and made such extensions and improvements, and at the time the application for authority to issue and

sell bonds was made, another public service corporation known as the Indianapolis Light and Heat Company was engaged in the business of manufacturing heat and light in the city of Indianapolis in competition with the relator and was furnishing light to the city for streets and alleys. In .passing upon the application of relator, the Public Service Commission granted authority to issue and sell bonds to the amount of $75,000 and declined to authorize the issue of the remaining $28,000 necessary to cover the cost of such improvement, on the ground that the additions and improvements upon which the authority to issue $28,000 of bonds was asked constituted a duplication of the instrumentalities already in existence and in use by the Indianapolis Heat and Light Company, and for that reason they would be neither used nor useful for public convenience.   This is a mandamus proceeding brought to compel the Public Service Commission to issue to relator a certificate of authority to issue and sell bonds of the par value of $28,000.   The trial court overruled the demurrer of appellant to the complaint and on its refusal to plead further entered judgment against it and a peremptory writ was ordered directing it to issue the certificate as prayed.

The overruling of the demurrer to the complaint is assigned as error, thus presenting for consideration on appeal the several objections to the complaint set out in the memorandum attached thereto.

On behalf of appellant it is first asserted that the power to authorize the issue and sale of bonds as conferred by §§88, 89, 90, 91, 92, Acts 1913 p. 167, §§10052j3, 10052k3, 1005213, 10052m3, 10052n3 Burns 1914, is discretionary and judicial in its nature for which reason it is not subject to control by mandamus.   The first section mentioned pro-

vides that no stocks, bonds, notes or other evidences of indebtedness, payable at periods of more than twelve months in advance shall be issued to an amount exceeding that which may be reasonably necessary for the purpose for which such issue is authorized, which amount is to be determined as provided in the act.   The two succeeding sections provide the purposes for which stocks, bonds, notes and other evidences of indebtedness may be issued. As to stocks, §89, *supra*, provides that no stock or certificate of stock shall be issued except in consideration of money or of labor or property at its true money value as determined by the commission and that such stock shall not be sold by such utility corporation at a discount without the approval of the commission.   As to bonds and other evidence of indebtedness, the same section provides that no public utility shall issue such bonds or notes except for money, or labor or property estimated at its true money value as determined by the commission, and that the actual value thus received as found by the commission shall be at least seventy-five per cent of the face value of the bonds or other evidence of indebtedness authorized.   Section 90, *supra*, provides that stocks, bonds, notes and other evidence of indebtedness may be issued when necessary for the acquisition of property, the construction, completion, extension or improvement of its facilities, plant or distributing system, or for the improvement of its service, or for the discharge or lawful refunding of its obligations, or for the reimbursement of moneys actually expended for such purpose from its income, or from other moneys in the treasury of the public utility not secured or obtained from the issue of stocks, bonds, notes or other evidence of indebtedness within five years next prior to the filing of application.   Section 91,

*supra*, provides that a public utility desiring to issue such evidence of indebtedness shall file an application with the Public Service Commission requesting authority to make such issue and sale. This section provides what facts shall be stated in the application and also provides for a hearing by the commission.

The final provision of §89, *supra*, is as follows: "The amount of bonds, notes and other evidences of indebtedness which any public utility may issue shall bear a reasonable proportion to the amount of stock and certificates of stock issued by such utility, due consideration being given to the nature of the business in which the corporation is engaged, its credit, future prospects and earnings, the effect which such issue shall have upon the management and efficient operation of the public utility by reason of the relative amount of financial interest which the stockholders will have in the corporation and the circumstances surrounding the operation and business of the corporation." Section 92, *supra*, provides that if the commission shall determine that such proposed issue complies with the provisions of this act, such authority shall thereupon be granted and it shall issue to the public utility a certificate stating: (a) the amount of such stocks, certificates of stock, bonds, notes or other evidences of indebtedness reasonably necessary for the purpose for which they are to be issued and the character of the same; (b) the purpose for which they are to be issued and the property or service to be acquired thereby valued in detail.

From the provisions of this act it is apparent that the Public Service Commission is required to hear and determine the facts upon which the application is based and the facts thus determined constitute the foundation upon

which its order shall be based.   If the facts thus
found are such as to entitle the utility to a certif-
icate of authority to issue and sell bonds in a given
amount, it is the duty of the commission to issue
such a certificate.   Under such circumstances the
act required is ministerial and not discretionary.
To hold that such act is discretionary would en-
able the commission, after the facts were determined
to grant the certificate of authority or to withhold it
at its will, or to grant such a certificate to one pub-
lic utility and to withhold it from another under
the same state of facts.   Such is not the purpose of
the statute.   *State, ex rel.* v. *Porter* (1893), 134 Ind.
63, 32 N. E. 1021, 33 N. E. 687.   A duty is none
the less ministerial because the person who
is required to perform it may have to satisfy
himself of the existence of a state of facts un-
der which he is given his right or warrant to per-
form the required duty.   *Board, etc.* v. *State, ex rel.*
(1897), 147 Ind. 476, 46 N. E. 908; *Flournoy* v.
*City of Jeffersonville* (1861), 17 Ind. 169, 79 Am.
Dec. 468.

The order of the Public Service Commission in so
far as it is material to this decision is as follows:
"And the commission having examined the
evidence and being duly advised in the
premises determines that such proposed issue
complies with the provisions of an act of the Gen-
eral Assembly of Indiana, approved March 4,
1913, except as hereinafter stated.   That the
amount of bonds reasonably necessary for the reim-
bursement of the treasury of said company for
expenditures mentioned in said verified petition,
and under the terms of said trust deed, is $103,000.
The commission further finds that $28,000 of the
bonds, authority to issue which is prayed for in this
petition, will be used wholly to reimburse the treas-

ury of the Merchants Heat and Light Company for improvements and extensions of the property of said company which improvements will be neither used nor useful for the convenience of the public, for the reason that such property is a duplication of instrumentalities already in existence and in use owned by the Indianapolis Heat and Light Company and amply sufficient to supply all the needs of the community where such property for which the treasury is to be reimbursed in the sum of $28,000 is erected and constructed." If the commission had found that the utility had expended $103,000 in extensions and improvement of its distributing system and had also found that instrumentalities acquired did not possess a money value in excess of $75,000 by reason of the fact that a large portion of the newly acquired instrumentalities constituted a duplication of other instrumentalities existing and in use by another public utility, a different question would have been presented. The order shows that the expenditure of $103,000 was made by the company for certain purposes and that the issue of bonds requested was to reimburse the company for the money expended for such purpose. There is no finding that the extensions and improvements for which the expenditure was had did not represent a money value to the utility of the full amount of their cost. It thus appears that the certificate of authority to issue bonds as to $28,000 of the amount of such expenditure was refused upon the sole ground that this amount was expended in the duplication of instrumentalities already existing and in use by another public utility and which were amply sufficient to supply the needs of the public in that locality.

There can be no doubt that one of the purposes of statutes of the kind under consideration is the pre-

vention of the useless and wasteful expenditure of capital in the duplication of plants and
4. instrumentalities to be utilized in furnishing heat, light or other necessary service to the public. Such statutes proceed upon the assumption that all capital unnecessraily expended in this way will have the effect of increasing the cost of the service supplied to the public, and that, by legislative control and regulation of the rates to be charged the injurious results which might otherwise arise from a lack of competition can be effectually controlled. The State through its Public Service Commission has taken complete control of these corporations in so far as necessary to prevent the abuses of monopoly. *Attorney General* v. *Haverhill Gaslight Co.* (1913), 215 Mass. 394, 101 N. E. 1061; *Weld* v. *Gas, etc., Co.* (1908), 197 Mass. 556, 84 N. E. 101; *Idaho Power, etc., Co.* v. *Bloomquist* (1914), 26 Idaho 222, 141 Pac. 1083. The legislature by the act under consideration evinced a purpose to prevent a waste of capital by competing public utilities in the duplication of instrumentalities for public service, but the extent to which such a policy is to be carried is a question for the legislature and not one for the Public Service Commission or for the courts. By §97, Acts 1913 p. 167, §10052t3 Burns 1914; the commission is given power to determine whether public necessity or convenience requires an additional public utility in a municipality where a similar service is being furnished by a utility under a license, franchise or permit; and that no license, franchise or permit shall be granted to such second utility without the consent of such commission. If the legislature had gone further and provided that where two or more utilities were engaged in furnishing service of the same kind in the same municipality, neither should make any extensions which would

duplicate the instrumentalities of the other with
out first obtaining the consent of the commission,
and that money expended in such duplication with-
out the consent of the commission should not be
capitalized by the issue of stock, bonds or other
evidence of indebtedness, a different question would
have been presented. The act, however, contains no
provision restricting or limiting competition be-
tween companies engaged in furnishing competi-
tive service at the time the law became effective
except the provision as to the regulation of rates.

5. 3. The Public Service Commission derives its
authority from the law which creates it and
by which its powers are conferred and its
duties imposed. Under the facts found by
the commission, this statute conferred upon
appellee the right to receive at the hands
of the commission a certificate of authority to issue
bonds to the amount of $103,000. The facts as
found showed that the money had been expended in
accordance with the statutory requirements author-
izing its capitalization by an issue of bonds, and the
commission had no power to add a requirement
which the legislature had not seen fit to impose. It
was the duty of the commission to issue the certif-
icate authorizing the utility to issue bonds to the
amount of $103,000, and it had no authority to
withhold such certificate as to $28,000 of such
amount on the grounds stated.

Appellant relies on the case of *Interstate Tel., etc.,
Co.* v. *Public Utilities Board* (1913), 84 N. J. L.
184, 86 Atl. 363. In that case the board had de-
clined to authorize an issue of bonds on the ground
that it appeared to the satisfaction of the board
that there was no reasonable warrant for the ex-
pectation that the company from its earnings would
be able to pay the annual interest on the proposed

issue of bonds. The question there involved is not presented in this case, and, besides, the powers conferred upon the commission by the New Jersey statute seem to be more general and comprehensive, with reference to the control of bond issues, than are the powers conferred by the act of our General Assembly. For the reasons stated, this case is not of controlling influence in the decision of the questions here involved.

It is well settled in this State that an action of mandamus cannot be maintained when the party seeking the relief has an adequate remedy at law and that the right of appeal is an adequate legal remedy within the meaning of this rule. *State, ex rel.* v. *Board, etc.* (1892), 131 Ind. 90, 30 N. E. 892. Appellant asserts that appellee had a right of appeal from the order in question under the provisions of §78 of the Spencer-Shively Public Utilities Act. Section 10052z2 Burns 1914, Acts 1913 p. 167. This section specifies the orders of the commission which may be reversed on appeal and such specifications do not include orders granting or refusing authority to issue and sell bonds.

The trial court did not err in overruling the demurrer to the complaint. Judgment affirmed.

NOTE.—Reported in 111 N. E. 10. As to existence of other adequate remedy as bar to application for writ of mandamus, see 98 Am. St. 866. On power and duty of public service commission to control the issuance of securities by public service corporations, see 45 L. R. A. (N. S.) 629. As to mandamus to control the acts of a public service commission, see Ann. Cas. 1914 D 795. See, also, under (2) 29 Cyc 1432; (3) 10 Cyc Anno. 1167, 1168.