### BATESVILLE TELEPHONE CO. v. PUBLIC SERVICE COMMISSION OF INDIANA et al.

#### No. 4384.

Circuit Court of Appeals, Seventh Circuit.

Jan. 7, 1931.

Rehearing Denied Feb. 19, 1931.

William H. Thompson, Albert L. Rabb, and Thomas D. Stevenson, all of Indianapolis, Ind., and Michael F. Bohland, of Batesville, Ind., for appellant.

George W. Hufsmith and Connor Ross, both of Indianapolis, Ind., for appellees.

Before SPARKS and PAGE, Circuit Judges, and LINDLEY, District Judge.

PAGE, Circuit Judge.

The District Court dismissed for want of equity appellant's bill to enjoin enforcement of an order of the Public Service Commission of Indiana, called commission, permitting fifty-five residents of Versailles, Ind., to construct telephone lines from their offices and places of business to the Farmers' Mutual Telephone Company's exchange, called Farmers' Exchange, located just outside Versailles.

Two questions are presented: (a) Did the commission have jurisdiction to enter the order; and (b) was the order valid?

The following matters occurred in the order in which they are set out.

In Versailles, a town of 500 people, there was a telephone exchange, with long-distance connections, owned by appellant and its predecessor. Some twelve or fifteen farmers' telephone lines also connected through the Versailles exchange, for which each user paid 25 cents per month as a switching charge. The commission increased that charge to 50 cents per month, and most of the farmers' lines disconnected because thereof.

Fifteen farmers' lines petitioned the commission for permission to establish an exchange either inside or outside of the town of Versailles. The commission, by order entered March 30, 1928, denied the right to establish an exchange in the town of Versailles, but granted the right to establish such exchange outside the corporate limits.

In July, 1928, fifty-five residents of Versailles asked permission from the commission to construct telephone lines from their residences and places of business to the Farmers' Exchange, outside of Versailles. It was alleged that telephone connection between people in the country and in town was necessary for business reasons, and that, because of the unwillingness or inability of persons outside of Versailles to pay the increased switching rate fixed by the commission, the service of the Versailles Telephone Company did not reach the people upon whom the petitioners depended for business.

After a hearing, the commission found that a farmers' exchange, with which ten farmers' lines were then connected, had been constructed, and that the people of Versailles were losing business because they had no connection therewith. Concerning appellant, there were two findings: (1) That it operated an exchange; and (2) that it did not, and could not, render service in the territory served by the Farmers' Exchange. The commission then found that there existed at Versailles a condition which justly entitled petitioners to base their claim for relief on the ground of convenience and necessity. It was ordered that: "Petitioners in this case be and they are granted the authority to build their pole lines and wires connected therewith and to establish the proper connection with the Farmers * * * Company's exchange outside the corporate limits of the town of Versailles * * *; that the line herein authorized shall be solely for the convenience of the subscribers establishing said line, that they shall not be operated for direct gain from rates or charges connected with their use."

Appellees, in their answers, admit that it was the intention to permit petitioners to connect with the Farmers' Exchange and with each other. The undisputed evidence is that the enforcement of the order will be to destroy, substantially, appellant's utility in Versailles.

Notwithstanding such consequences, appellees seek to support the order, claiming it was made upon authority of section 97 of the Indiana Public Service Commission Act (section 12770, Burns' Ann. St. Ind. 1926), viz.: "No license, permit or franchise shall be granted to any person, copartnership or corporation to own, operate, manage or control any plant or equipment of any public utility in any municipality where there is in operation a public utility engaged in similar service under a license, franchise or permit without first securing from the commission a declaration, after a public hearing of all parties interested, that public convenience and necessity require such second public utility. * * * "

Although we find no single section of the statute defining the powers of the commission, we gather from the Public Service Commission Act that the powers of the commission are limited to the supervision and regulation of public utilities. The Farmers' Exchange was not before the commission under the last petition, and the order did not purport to regulate or supervise its acts. The

rights asked for by the petitioners were solely for their separate and individual benefit, and there is no intimation that they desired to construct or operate a public utility. Nothing was asked on behalf of, and the order granted nothing to, the other nine-tenths of the residents of Versailles. The poles and lines to be erected by the petitioners were not to be available to any one else in Versailles.

We are of opinion that the proceeding before the commission was not one contemplated by, and did not conform to, the requirements of section 97, supra, as will be evidenced from a parallel of what was required under that section and what was done before the commission. The prohibition against duplication of utilities, rendering substantially the same service, is absolute, unless the conditions of that section are met.

| What is required: | What was done: |
|---|---|
| 1. Petition for a public utility. | 1. Petition was for private and individual privileges. |
| 2. Hearing on question as to whether public convenience and necessity required a second utility. | 2. Hearing was limited to the question as to whether "the public welfare demands that the service rendered by the Farmers Mutual Telephone Company be made available to petitioners." |
| 3. A finding that public convenience and necessity required a second utility. | 3. The finding was that the exchange could not render service in the territory served by the Farmers Exchange, and that public welfare demanded that that service be made available to petitioners. |

Although one of the findings was "said Versailles Telephone exchange does not and cannot render service in the territory served by said" Farmers' Exchange, it is an admitted fact that the Versailles Exchange had always served the farmers' lines, and that the only reason why it was not at the time of the hearing doing so was because the farmers' lines had voluntarily discontinued because they would not pay for the service the rate fixed by the commission as a lawful and reasonable rate. The finding that appellant's exchange cannot render the service is manifestly untrue, because the law of Indiana then and now in force made it the duty of appellant, as a public utility, to make physical connection with every other public utility, and the commission was empowered and directed, if public convenience and necessity required such physical connection, to order it to be made.

Immediately preceding the order itself, the commission said that, since the town of Versailles had granted petitioners the right to establish the pole lines asked for, "the Commission should grant a certificate of convenience and necessity with authority to establish said lines and connections with" the Farmers' Exchange. That assumption was wholly false. No application was made to the town of Versailles for any permit until after the order was entered by the commission, and the board of trustees was then told that the Public Service Commission had given petitioners the right to erect their poles and lines, and that they wanted permission to do so from the town. That petition was never acted upon.

In the hearing where the order was made on March 30, 1928, the commission said: "The Commission was, and is, impressed with the fact that the Versailles Telephone Company is rendering satisfactory service to the patrons of the Versailles Telephone Company. It is further impressed with the fact that if a competing telephone plant is allowed to establish itself within the corporate limits of the town of Versailles, the competition thus caused would be ruinous both to the existing utility and to the utility sought to be established. It also believes that it would not be advantageous to the patrons of the telephone generally in said community and would result in a general breakdown of telephone service in said locality. It further believes that the exigencies of the situation do not require the establishment of another exchange in said town." That order is still in force, and there is nothing to contradict the conclusions the commission there reached.

We are of opinion that the commission had no jurisdiction to enter the order, and that the order was void.

The order dismissing the bill is set aside, and the relief prayed granted.