MORGAN COUNTY REMC *v.* PUBLIC SERVICE CO. OF INDIANA.

[No. 569S109. Filed February 26, 1970. No petition for rehearing filed.]

H. *Richard Miles*, of Martinsville, *Parr, Richey, Obremskey, Pedersen & Morton*, of Lebanon, for appellant.

*Greg K. Kimberlin, DueJean Garrett*, of Plainfield and, of counsel, *John E. Hurt, McNutt, Hurt & Blue*, Martinsville, for appellee.

ARTERBURN, J.—This action was initiated upon appellant's (REMC) complaint wherein it sought a restraining order, temporary injunction and permanent injunction to restrain and permanently enjoin appellee (Public Service Co.) from constructing, maintaining and operating electrical distribution lines in a recently annexed addition (Wolfe's Eighth Subdivision) to the City of Martinsville, and further restrain appellee from selling electrical energy to any consumer in said territory.

Appellee filed a demurrer in response to appellant's complaint. The demurrer, which was supported by a memorandum, was sustained. Appellant refused to plead further and the trial court entered judgment adverse to appellant.

The memorandum in support of appellee's demurrer raised a single objection to appellant's complaint. That memorandum in substance stated that appellant's own articles of incorporation, which were attached to appellant's complaint as an exhibit, prohibited appellant from providing service within the limits of any incorporated town or city *having in excess of fifteen hundred (1500) inhabitants*. It was then noted that

the area in question, having been annexed to the City of Martinsville, Indiana, was within an incorporated city having in excess of fifteen hundred (1500) inhabitants. The demurrer is not sustainable on this basis.

Appellant was organized and exists by virtue of the Indiana Rural Electric Membership Corporation Act, being Burns' Ind. Stat. Ann. § 55-4401 *et seq.* Appellant's articles of incorporation were approved on June 24, 1939. Appellant was granted a certificate of public convenience and necessity, to serve electricity to, among other areas, the territory in dispute before it was annexed. Appellant's articles of incorporation contain the following provision relating to the territory which appellant may service:

"But in any and every case, excepting any territory within the limits of any incorporated city or town having in excess of fifteen hundred (1500) inhabitants . . ."

This provision was taken directly from Burns' Ind. Stat. Ann. § 55-4404 (b) as it then existed. In 1939 that statute provided that the articles of incorporation of a REMC must contain:

"A reasonable description of the territory in which its operations are to be conducted, and which shall not include any incorporated city or town having a population in excess of fifteen hundred (1500) inhabitants . . ."

It is appellee's contention, and presumably the reasoning of the trial court since it sustained appellee's demurrer, that on October 19, 1964, when the territory in question was annexed to the City of Martinsville, an incorporated city of more than fifteen hundred (1500) inhabitants both in 1937 when appellant was incorporated and certified and in 1964 when the annexation occurred, the annexed territory *automatically* ceased to be within appellant's authorized service area by virtue of the above quoted provision of appellant's articles of incorporation. With such reasoning we cannot agree.

The question, as a practical matter, is whether the clause should be interpreted to mean that appellant is unable to pro-

vide electrical service in a city or town which, subsequent to incorporation of appellant, has grown to include in excess of fifteen hundred (1500) inhabitants or whether the determination is to be made at the time of incorporation of the appellant. We feel that whether a city or town has in excess of fifteen hundred (1500) inhabitants is a determination that must, in all fairness, be made at the time appellant's articles of incorporation are approved. We reach this conclusion on the basis of several considerations. We first note that the legislature, in 1953, clarified the meaning of Burns' Ind. Stat. Ann. § 55-4404. That statute now states that the articles of incorporation of a REMC must contain:

> "The Articles of Incorporation of a Rural Electric Membership Corporation must contain a reasonable description of the territory in which its operations are to be conducted, and which shall not include any incorporated city or town having a population in excess of fifteen hundred (1500) inhabitants *at the time such articles are first approved by the public service commission* . . ." (emphasis added)

We view this amendment as a clarification and not as the creation of a new statutory scheme. The desirability of the result we reach, and the result sought by the legislative amendment, is apparent. The territory of the appellant would thereby be fixed and subject to change only by authorized means. Such certainty is desirable.

We further point out that in this situation, where a portion of the service territory of appellant was annexed by an incorporated city of more than fifteen hundred (1500), the procedure whereby appellant ceases to have the authority to provide service in the territory so annexed is an orderly one as clearly set out in Burns' Ind. Stat. Ann. § 55-4418a. To adopt appellee's view that annexation ipso facto renders appellant unable to render service in the territory would torture the legislative scheme for the transfer of

such service and make the statute to a great extent meaningless.

Burns' Ind. Stat. Ann. § 55-4418a reads as follows:

"Municipality annexing territory served by electric utility —Purchase of property—Condemnation.—Whenever a municipality in which a public utility (including a corporation organized, or admitted to do business, under this act [§§ 55-4401—55-4426]) is rendering electric utility service under a franchise, license, or indeterminate permit or in which a municipally owned utility is rendering electric utility service, as the case may be (such public or municipal utility being hereinafter called the "franchised utility"), annexes additional territory and such annexed territory includes any territory in which the franchised utility was not authorized to render electric utility service immediately prior to such annexation but in which some other public utility (including a corporation organized, or admitted to do business, under this act) or municipally owned utility (such public or municipally owned utility being hereinafter called the "other utility") was lawfully rendering electric utility service at such time, then the franchised utility and the other utility shall promptly negotiate for the purchase by the franchised utility of the property owned by the other utility within the annexed territory and used and useful by the other utility in or in connection with the rendering of electric utility service therein. In the event that such property has not been purchased by the franchised utility within 90 days after such annexation takes place, then the franchised utility may bring an action in the circuit or superior court of the county where such municipality (or the major part thereof in area) is located against the other utility, as defendant, for the condemnation of such property of the other utility. *Until and unless such purchase or condemnation is effected, the other utility shall have authority to operate within the portion of the annexed territory in which it was lawfully rendering electric utility service immediately prior to such annexation.* [Acts 1935, ch. 175, § 18a, as added by Acts 1953, ch. 48, § 2, p. 153.]" (Emphasis Added)

We believe the import of this statute is clear. It establishes the procedure whereby a utility, which has been granted the authority to furnish electrical energy to a municipality (appellee), may purchase or condemn electrical facilities and other such property of another utility, which,

prior to annexation, had been providing electrical service in the annexed area (appellant). The crux of the problem before us concerns the last sentence in Burns § 55-4418a as above quoted.

It is appellant's position that until its property is either purchased or condemned, as provided in § 55-4418a, it alone has the right to serve in the annexed area. Appellee on the other hand urges that purchase or condemnation by it of appellant's property located in the annexed area is not a requisite to its providing service in the annexed area.

We are of the opinion that the appellant, pursuant to § 55-4418a, has the right to continue servicing and that portion of the annexed territory in which it was lawfully rendering service immediately prior to annexation until such time as its used and useful facilities are acquired by appellee. This conclusion is clearly supported by the last sentence of § 55-4418a which provides:

> "Until and unless such purchase or condemnation is effected, the other utility shall have authority to operate within the portion of the annexed territory in which it was lawfully rendering electric utility service immediately prior to such annexation."

Permitting appellant to continue servicing that portion of the annexed area where it was already rendering service at the time of the annexation serves to protect the public, as well as appellant's investment in its operating facilities, until the same can be purchased or condemned.

Our interpretation of § 55-4418a best meets with the realities of our society. The growth of municipalities will continue. Such growth of necessity results in annexation. What was once "rural" becomes "urban." The purpose of the law is to make such growth and transition as fair and in a manner least likely to disrupt service to the public.

Appellant further argues that the lower court's ruling holds that irrespective of the number of customers being served by

appellant at the time of annexation, the utility serving the municipality, the appellee, would have the unquestioned right to immediately take over the facilities of the appellant without just compensation. It is reasoned that the appellant was granted a certificate of public convenience and necessity and thereby authorized to serve the area in question; that the right to service the area is of little or no value if interlopers can invade the territory by simply annexing the territory into a city of over 1500 inhabitants. The argument is then essentially that the right to serve a particular territory is a valuable property right for which compensation should be paid prior to any infringement or extinction.

Appellant was granted its certificate of public convenience and necessity by the Public Service Commission in 1939. Appellant's certification was, then, no more than an indeterminate permit. *Southern Indiana Gas & Electric Co.* v. *Indiana Statewide Rural Electric Cooperative, Inc.* (1968), 251 Ind. 459, 242 N. E. 2d 361, Burns' Ind. Stat. Ann. §§ 54-604, 54-105. As such appellant's right to serve the area in question was subject to termination "according to law." One such means of termination was provided for in Burns' § 55-4418a. That statute establishes the procedure whereby termination is effected. It clearly states that the property subject to purchase or condemnation is the used or useful property of the appellant connected with its rendering of electric service in the area.

Appellant may continue to operate these facilities until they are acquired either by purchase or condemnation. It cannot be said, therefore, that appellant's property is impaired or taken without just compensation.

The appellee, without abandoning its contention that the complaint was bad on the ground stated in its demurrer, urges upon us that there is a further and additional reason to support the court's ruling in sustaining the demurrer, namely the complaint does not allege the appellant REMC owns any

property in the annexed areas. Appellee says we on appeal have the duty to sustain the trial court's ruling on any valid ground regardless of the failure of the memorandum to cover such ground.

We have no quarrel with the general principle that it is our duty to sustain the trial court's actions, but there are exceptions and limitations in its application as in most cases of general principles of law. In this case the court sustained the demurrer, presumably on the ground which was stated in the memorandum and about which the very merits of this case revolves. The appellants, REMC, refused to amend in order to stand on its legal position, as to the law involved in this case, and present to this court on appeal on that point of law. Now to decide the complaint was defective on a ground not raised in the trial court would deprive appellant of an opportunity to amend. Thus, it would be manifestly unjust to deprive a party of the right to amend, and have the case carried through the long and costly expenses of an appeal merely to have it sent back with no real result accomplished and the merits of the case still undecided.

An appeal court in deciding a case on a point not raised in the trial court, must use discretion and runs then a risk of doing an injustice. We pointed that out in *J. I. Case Co.* v. *Sandefur* (1964), 245 Ind. 213, 197 N. E. 2d 519, when the Appellate Court did this and was in error. We recognize the human frailties that judges have of wanting to appear to have beheld something in the law that the attorneys overlooked.

In the case before us the statute being Burns' Ind. Stat. Ann. § 2-1007 (6), plainly says the appellee waived all points not raised in the memorandum in support of its demurrer and in view of the fact that the point could have been raised in the trial court and there remedied by giving the REMC the opportunity to amend, we feel the waiver should stand and we should go to the merits of the case before us on appeal.

Judgment is reversed with directions to overrule the demurrer to the complaint.

Hunter, C.J., and Givan, J., concur; Jackson and DeBruler, JJ., concur in result.

NOTE.—Reported in 255 N. E. 2d 822.