DECATUR COUNTY RURAL ELECTRIC MEMBERSHIP CORPORATION AND UNITED STATES OF AMERICA *v.* PUBLIC SERVICE COMPANY OF INDIANA, INC.

[No. 470S88. Filed September 6, 1973. Rehearing denied December 10, 1973.]

*John J. Dillon, Virginia Dill McCarty,* of Indianapolis, *Wickens & Wickens,* of Greensburg, *Stanley B. Miller,* United States Attorney, of Indianapolis, for appellants.

*Greg K. Kimberlin, Duejean C. Garrett,* of Plainfield, *Leon J. Humbert,* of Greensburg, *Sharpnack, Bigley & Jurgemeyer,* of Columbus, for appellee.

HUNTER, J.*—This is an action brought pursuant to IC 1971, 8-1-13-19 (Ind. Ann. Stat. § 55-4418a [1972 Supp.]),

---

* This case was transferred and re-assigned to this office June 25, 1973.

by the plaintiff-appellee, Public Service Company of Indiana, Inc., an Indiana public utility, to condemn all of the electric utility property owned by defendant-appellant, Decatur County Rural Electric Membership Corporation (REMC). The trial court entered an interlocutory order, overruling the defendant-appellant Decatur REMC's amended objections to plaintiff-appellee's complaint in condemnation and appointing appraisers. The overruling of those objections forms the basis of this appeal. Jurisdiction is based on IC 1971, 33-3-2-7(1) and (8), (Ind. Ann. Stat. § 4-214).

The general question presented to this Court for review is whether Public Service Company has the right to appropriate the property of Decatur REMC. The specific issues raised by the Appellant's amended objections and those herein raised on appeal are:

1. Is IC 1971, 8-1-13-19 (Ind. Ann. Stat. § 55-4418a) (Section 18a of the Rural Electric Membership Corporation Act, hereinafter referred to as "Section 18a") constitutional?

    (a)    Does it allow for an unconstitutional taking of Decatur REMC's property without just compensation?

    (b)    Does it work to impair Decatur REMC's contractual relations with the State of Indiana?

    (c)    Does it confer special privileges and immunities upon the Public Service Company of Indiana, and thereby deny to Decatur REMC equal protection of the law?

    (d)    Does it unconstitutionally authorize the taking of property already devoted to a public use?

    (e)    Does it contravene the Supremacy Clause of the United States Constitution by frustrating the federal policy of rural electrification reflected in the Rural Electrification Act?

2. Are Public Service Commission approval and stockholder authorization prerequisites to a Section 18a condemnation?

3. Must a complaint filed pursuant to Section 18a of the REMC Act specifically include franchise rights as property taken?

4. Must an offer to purchase specifically include a value for franchise rights?

Section 18a reads as follows:

"*Municipality annexing territory served by electric utility— Purchase of property—Condemnation.*—Whenever a municipality in which a public utility (including a corporation organized, or admitted to do business, under this act [§§ 55-4401—55-4426] is *rendering electric utility service under a franchise, license or indeterminate permit* or in which a municipally owned utility is rendering electric utility service, as the case may be (such public or municipal utility being hereinafter called the 'franchised utility'), annexes additional territory and such annexed territory includes any territory in which the franchised utility was not authorized to render electric utility service immediately prior to such annexation but in which some other public utility (including a corporation organized, or admitted to do business, under this act) or municipally owned utility (such public or municipally owned utility being hereinafter called the 'other utility') was lawfully rendering electric utility service at such time, then the franchised utility and the other utility shall promptly negotiate for the purchase by the franchised utility of the property owned by the other utility within the annexed territory and used and useful by the other utility in or in connection with the rendering of electric utility service therein. In the event that such property has not been purchased by the franchised utility within 90 days after such annexation takes place, then the franchised utility may bring an action in the circuit or superior court of the county where such municipality (or the major part thereof in area) is located against the other utility, as defendant, for the condemnation of such property of the other utility. Until and unless such purchase or condemnation is effected, the other utility shall have authority to operate within the portion of the annexed territory in which it was lawfully rendering electric utility service immediately prior to such annexation. [Acts 1935, ch. 175, § 18a, as added by Acts 1953, ch. 48, § 2, p. 153.]" (Emphasis added.)

# I

## THE CONSTITUTIONALITY OF SECTION 18a

Decatur REMC's allegation that Section 18a allows for an unconstitutional taking of its property is largely predicated

on the principles enunciated by this Court in *Kosciusko County REMC* v. *Public Service Commission* (1948), 225 Ind. 666, 77 N. E. 2d 572. The *Kosciusko* case held, *inter alia,* that an REMC has a *franchise property right* which must be protected from illegal encroachments by other utilities. (See also, *City of Greenfield* v. *Hancock County Rural Electric Membership Corp.* (1971), 256 Ind. 15, 266 N. E. 2d 799.)

With the *Kosciusko* case as a premise, the appellants cite us to the general proposition that compensation for condemned property includes compensation for any franchise property rights incident thereto. (See *Ft. Wayne Land & Imp. Co.* v. *Maumee Ave. Gravel Road Co.* (1892), 132 Ind. 80, 30 N. E. 880). The appellants, also, however, concede that the right to just compensation for franchise rights may be contracted away by a public utility pursuant to IC 1971, 8-1-2-92 and 93 (Ind. Ann. Stat. § 54-604 and 606 [1951 Repl.]). The pertinent provisions in those sections read as follows:

"Sec. 92. *Every license, permit or franchise hereafter granted to any public utility shall have the effect of an indeterminate permit subject to the provisions of this act, and subject to the provisions that the license, franchise or permit may be revoked by the commission for cause and that the municipality may purchase the property of such public utility, as provided herein. Any such municipality is authorized to purchase such property and every such public utility is required to sell such property at the value and according to the terms and conditions as herein provided.*

"Sec. 93. *Any public utility accepting or operating under any indeterminate license, permit or franchise hereafter granted shall by acceptance of any such indeterminate license, permit or franchise be deemed to have consented* to a future purchase of its property including property located in contiguous territory within six (6) miles of the corporate limits of such municipality by the municipality in which such utility is located, at the value and under the terms and conditions as provided in this act, and shall *thereby be deemed to have waived the right of requiring the necessity of such taking to be established by the judgment of a court, and to have waived all other remedies and rights relative to condemnation,* except such rights and remedies as are provided in this act and shall have been deemed to

have consented to the revocation of its license, permit or franchise by the commission for cause. (Source: Acts 1913, c. 76, §. 102: as amended by Acts 1933, c. 190, §. 12)." (Emphasis added.)

Decatur REMC contends that it is *not* a public utility, relying primarily on the following language in the REMC Act, IC 8-1-13-18 (Ind. Ann. Stat. § 55-4418(a) [1972 Supp.]):

"Any corporation organized, under this act shall be subject to the jurisdiction of the public service commission for the purpose of fixing rates to be charged to patrons of such corporation for energy, and for such purpose said public service commission is given jurisdiction to proceed in the same manner and with like power *as is provided by the 'Public Service Commission Act' in the case of public utilities.*" (Emphasis added by appellants.)

Appellants conclude that the above is "a clear and unequivocal statement by the General Assembly that an REMC organized under the REMC Act is *not* a public utility within the meaning of the Public Service Commission Act."

It is Decatur REMC's position that it is not a public utility and that it possesses more than a mere "indeterminate permit," but rather, franchise rights granted by the state. Therefore, appellant believes that the termination provisions, i.e., waiver of the right to just compensation for franchise rights, incidental to indeterminate permits are inapplicable here. Since there has been no waiver, Decatur REMC should receive just compensation for the taking of its franchise service rights.

Appellant's argument is without substance. To begin with, this Court rejects Decatur REMC's contention that it is not a public utility. The statutory language found in Section 18a and § 55-4418(a), cited hereinabove, clearly establishes that the legislature conceived of no distinction between an REMC and other public utilities. The legislative intent was to apply the same rules and procedures found in these two statutory provisions to *all* utilities—to

include REMCs. For example, Section 18a of the REMC Act specifically states:

"Whenever a municipality in which a public utility is rendering electric utility service . . . annexes additional territory and such annexed territory includes any territory in which the franchised utility was not authorized to render electric utility service—but in which *some other public utility (including a corporation organized, or admitted to do business, under this Act)* . . ." (Emphasis added.)

Ind. Ann. Stat. § 55-4418(a), *supra,* provides that the procedures applicable to public utilities, pursuant to the Public Service Commission Act, should be equally applicable to an REMC.

The *Kosciusko* case, upon which appellant so heavily relies, unequivocally holds that REMCs are public utilities:

"*By electing to be organized under this act, and by submitting to regulation it must be considered that REMC* has devoted its property to a public use and *is holding itself out as a public utility. In our opinion the entire purport of the Rural Electric Membership Corporation Act leads to the conclusion that it was for the purpose of affording a means of creating a public utility* corporation such as REMC to engage in the electrical energy business, and, as it provides, to encourage the 'fullest possible use of electric energy' in its territory. (Emphasis added)" *Kosciusko, supra,* at 678.

Decatur REMC's position is further undermined by the holdings in *Southern Indiana Gas & Electric Co.* v. *Indiana Statewide Rural Electric Coop.* (1968), 251 Ind. 459, 242 N. E. 2d 361, *Morgan County Rural Electric Membership Corp.* v. *Public Service Company of Indiana* (1970), 253 Ind. 541, 255 N. E. 2d 822, and *Hendricks County Rural Electric Membership Corporation* v. *Public Service Company of Indiana* (1971), 150 Ind. App. 503, 276 N. E. 2d 852. These cases state the well-established rule that the certificate of convenience and necessity held by an REMC constitutes no more than an indeterminate permit and is thus "subject to termination 'according to law.'" (*Morgan County,*

*supra,* at 826.) In the case at bar, Decatur REMC holds a certificate of convenience and necessity (granted in 1937) and, therefore, such certificate is subject to termination according to law. Section 18a of the REMC Act provides for such termination.

The *Morgan County* case is directly on point with the case at bar. This Court's rejection of the Morgan County REMC's argument is equally applicable to Decatur REMC's contentions, and Chief Justice Arterburn's language best illustrates the futility of appellant's argument:

"... The argument is then essentially that the right to serve a particular territory is a valuable property right for which compensation should be paid prior to any infringement or extinction.

"Appellant was granted its certificate of public convenience and necessity by the Public Service Commission in 1939. Appellant's certification was, then, no more than an indeterminate permit. Southern Indiana Gas & Electric Co. v. Indiana Statewide Rural Electric Cooperative Inc. (1968), 251 Ind. 459, 242 N. E. 2d 361, Burns' Ind. Stat. Ann. §§ 54-604, 54-105. As such appellant's right to serve the area in question was subject to termination 'according to law.' One such means of termination was provided for in Burns' §§ 55-4418a. That statute establishes the procedure whereby termination is effected. It clearly states that the property subject to purchase or condemnation is the used or useful property of the appellant connected with its rendering *County, supra,* at 825."

"Appellant may continue to operate these facilities until they are acquired either by purchase or condemnation. It cannot be said, therefore, that appellant's property is impaired or taken without just compensation." *Morgan County, supra,* at 825.

Appellant's allegation that Section 18a unconstitutionally impairs a valid contract as between the state and Decatur REMC is totally without merit. It has been established that Decatur REMC possesses nothing more than an indeterminate permit—one which may be terminated at any time pursuant to Section 18a of the REMC Act. The State has retained the right of termination, while Decatur REMC received a conditional franchise. In effect,

Decatur REMC consented to the "impairment" of its "contract" with the state. Hence, there is no intrusion as contemplated by the appellants.

Appellants argue that Section 18a, in its application, unconstitutionally discriminates against them. It is their position that Section 18a of the REMC Act "purports" to apply equally to all public utilities, yet, in reality, applies unequally. Any utility *appears* to qualify as "the franchised utility" which serves the municipality at the time of annexation and as "the other utility" authorized to serve the annexed territory prior to annexation. Since the REMCs are only mandated to serve rural areas, i.e., communities having a population of less than 1,500, they will rarely, if ever, be the so-called "franchise utility." Furthermore, appellants contend Section 18a provides for a constitutionally impermissible classification by failing to include utilities other than electric service. (Section 18a, in fact, deals only with electric service utilities.) Appellant alleges that the above-mentioned discriminations are violative of the equal protection clauses of Article 1, § 23 of the Indiana Constitution and the 14th Amendment to the United States Constitution.

Legislative classifications are not *per se* unconstitutional. In fact, legislation, by its very nature, is an enterprise requiring subject matter distinctions. However, arbitrary and capricious classification will not pass constitutional muster.

The Equal Protection Clause does not prevent a state from indulging in *reasonable* legislative classification. If it can be established that there is any rational basis for the classification, it will generally be sustained. *State of Indiana ex rel. Miller et al.* v. *McDonald, et al.* (1973), 260 Ind. 565, 297 N. E. 2d 826. A higher level of judicial scrutiny is required when there are fundamental rights or suspect classes involved. *Miller, supra.* A public utility has not heretofore been construed as a "suspect class," nor

is the privilege to provide electric service a fundamental right. Therefore, the classification which inheres in the application of Section 18a of the REMC Act may be sustained upon a showing of rationality or reasonableness.

There are rational grounds upon which the classifications created by Section 18a are based. There is a longstanding Indiana policy that two utilities should not render like service in the same municipality. The original enactment of the Public Service Commission Act reflects this fundamental policy:

> "No license, permit or franchise shall be granted to any person, copartnership or corporation to own, operate, manage or control any plant or equipment of any public utility in any municipality where *there is in operation a public utility engaged in similar service* under a license, franchise or permit without first securing from the commission a declaration, after a public hearing, of all parties interested, that public convenience and necessity require such second public utility." (Emphasis added.) IC 1971, 8-1-2-86 (Ind. Ann. Stat. § 54-601 [1951 Repl.]).

This statute has been construed to mean that the operation of two utilities providing the same service within the same municipality is contrary to the stated policy of the state. See: *Public Service Commission* v. *State ex rel. Merchants Heat and Light Co.* (1915), 184 Ind. 273, 111 N. E. 10; *In re Northwestern Indiana Tel. Co.* (1929), 201 Ind. 667; 171 N. E. 65; *Batesville Telephone Co.* v. *Public Service Commission* (1931), 46 F. 2d 226 (Court of Appeals, Seventh Circuit) ; *Re Public Service Company of Indiana, Inc.* (1947), 71 P.U.R. (n.s.) 45 (wherein the Public Service Commission granted the Public Service Company of Indiana the right to extend its service into a territory theretofore serviced by an REMC on grounds that public convenience and necessity require the avoidance of duplication).

REMCs were created to service *rural* Indiana. REMCs were organized "for the purpose of promoting and encouraging the fullest possible use of electric energy in the state by making electric energy available to in-

habitants of rural areas of the state at the lowest cost consistent with sound economy and prudent management of the business of such corporations . . ." IC 1971, 8-1-13-2 (Ind. Ann. Stat. § 55-4402 [1951 Repl.]).

It is only logical that once an area serviced by an REMC is incorporated into a municipality already serviced by an electric utility, it loses its rural identity. The justification for the continued existence of the REMC in such area no longer exists—its objective having been accomplished. This result is not only reasonable, but is fully within the ambit of statutory purposes and goals.

Appellant's contention that Section 18a violates equal protection, because it applies only to electric utilities, is also without merit. It is the duty of the legislature to promulgate statutes regarding the operation of public utilities. A legislative decision to limit the subject matter of such a statute to electric energy is clearly reasonable and, hence, permissible, so long as the statute does not result in invidious discrimination against any one electric utility or any one group of the same.

We, therefore, hold that Section 18a of the REMC Act, on its face and in its application, is consistent with the notions of equal protection and, hence, does not offend the Constitutions of either the United States or Indiana.

Decatur REMC further alleges that Section 18a improperly authorizes the taking of property already devoted to a public use and, hence, is unconstitutional. We believe Section 18a is a permissible expression of legislative policy. In *Morgan County REMC, supra,* this Court stated:

"Our interpretation of § 55-4418a best meets with the realities of our society. The growth of municipalities will continue. Such growth of necessity results in annexation. What was once 'rural' becomes 'urban.' The purpose of the law is to make such growth and transition as fair and *in a manner least likely to disrupt service to the public.*" (Emphasis added) at 825.

Section 18a represents a fundamental policy decision by the legislature. The exercise of eminent domain under Section 18a simply implements that policy; it is designed [13] to serve the greater public interest rather than private interests. We can find no constitutional infirmity in the state's delegation of its powers of condemnation to effectuate legitimate state policy.

Decatur REMC asserts that Section 18a unconstitutionally interferes with the federal policy of rural electrification reflected in the Rural Electrification Act, and, hence, violates the Supremacy Clause of the United States Constitution, Art. 6, cl. 2.

The Rural Electrification Act, U.S.C.A., Title 7, ch. 31, §§ 901, *et seq.*, authorizes federal loans to REMCs for the express purpose of "furnishing electric energy to persons in *rural* areas." (Emphasis added.) The Act defines "rural area" as "any area of the United States not included within the boundaries of any city, village or borough having a population in excess of fifteen hundred inhabitants."

After a reading of the Rural Electrification Act, we are unable to discern any clash between the State of Indiana and the United States. As we have stated, the purpose for an REMC's existence expires when the area which it serves becomes "urbanized." Once an area, which was theretofore "rural," is included within a municipality of 1,500 or more and becomes urban, it clearly falls outside the ambit of the Rural Electrification Act. Therefore, Section 18a in no way contravenes the Supremacy Clause.

## II

### PUBLIC SERVICE COMMISSION APPROVAL AND STOCKHOLDER AUTHORIZATION AS PREREQUISITES TO A SECTION 18a CONDEMNATION

It is Decatur REMC's position that IC 1971, 8-1-2-84 (Ind. Ann. Stat. § 54-510 [1951 Repl.]) implicitly provides that a condemnation proceeding brought pursuant to Section 18a

requires approval by the Public Service Commission and by the stockholders of Public Service Company of Indiana. IC 1971, 8-1-2-84 reads, in part, as follows:

> "Any such public utility may purchase or lease the used and useful property, plant or business, or any part thereof, of any other such public utility at a price and on terms approved by the commission. Whenever, in the case of any such purchase, the amount to be paid by the purchaser for the property, plant or business to be purchased shall be an amount in excess of five [5] per cent of the book cost to the purchaser of all the properties, plants and business owned by it at the time application is made to the commission for approval of such purchase, or whenever, in the case of any such lease, the book cost to the lessor of the property, plant or business to be leased shall be an amount in excess of five [5] percent of the book cost to the lessee of all the properties, plants and business owned by the lessee at the time application is made to the commission for approval of such lease, there shall be obtained from the holders of three-fourths of the voting stock of such purchaser or lessee their consent, authority and approval to such purchase or lease."

We reject this argument for two reasons. First, 8-1-2-84 makes no mention of condemnation actions, but, rather, deals only with voluntary sales or leases. Second, Section 18a makes no reference to the requirements of 8-1-2-84. In the absence of explicit language to the contrary, we must assume that the legislature intended to exempt condemnation actions from the requirements of 8-1-2-84.

### III

Finally, appellant argues that the Complaint in Condemnation is fatally defective for failure to specifically include franchise rights as property taken and that no good faith offer was made by Public Service Company in that value for franchise rights was not specifically included. As we have stated above, Decatur REMC had no right to compensation for any franchise due to the waiver inherent in the issuance of an indeterminate permit. Thus,

we are unable to discern any foundation for appellant's contention.

We commend counsel for both parties for their excellent briefs.

For all the foregoing reasons, the interlocutory order of the trial court overruling defendant-appellant's amended objections is hereby affirmed.

Arterburn, C.J., Givan and Prentice, JJ., concur; DeBruler, J., concurs in result.

### OPINION CONCURRING IN RESULT

DEBRULER, J.—I cannot keep in step with the majority of the Court, when it concludes from the language of IC 1971, 8-1-13-18, being Burns § 55-4418(a) and IC 1971, 8-1-13-19, being Burns § 55-4418a, that the Legislature conceives of no distinctions between the cooperative public utility and other public utilities. It appears to me from these enactments that they clearly delineate the jurisdiction of the Public Service Commission over an REMC, and contain no expression or intendment whatsoever that an REMC be regulated *in every respect* the same as other utilities. Burns § 55-4418a grants jurisdiction to the Public Service Commission to fix rates which may be charged by an REMC for energy. Nothing more. Burns § 55-4418(a) merely calls the REMC a "public utility" and subjects it to the loss of territory annexed by a city when that city is being served by some other "public utility". That statement would not warrant the conclusion which arises from the majority opinion as I read it, that the Legislature intends that the rural electric cooperatives be considered "public utilities" and therefore subject to the regulatory scheme contained in the Public Service Commission Act.

Neither do I agree that the prior cases of this Court or the Public Service Commission Act itself add any support to the conclusion reached by the majority. Even the majority in *Southern Indiana Gas & Electric Co.* v. *Indiana Statewide Rural Electric Coop.* (1968), 251 Ind. 459, 242 N. E. 2d 361,

(DeBruler, J., dissenting) would be surprised to see their opinion cited as supportive of so sweeping a conclusion. There, the majority found that Statewide was required to seek Public Service Commission approval of its plan to generate electricity, since the original grant of authority in the original articles of incorporation approved by the Public Service Commission to do so, had been lost by non-use; and it was therefore concluded that Statewide should seek Public Service Commission approval for what was conceived in the majority as an expansion of the authority granted in the original articles of incorporation. In no way could the holding in that case support the conclusion that the REMC is a "public utility."

My dissent in the *Statewide* case led to my concurring in result in the case of *Morgan County REMC* v. *Public Service Company of Indiana* (1970), 253 Ind. 541, 255 N. E. 2d 822. There, it was my unexpressed view that by enacting Burns § 55-4418a, the Legislature had directly affected the nature of the right of the REMC to serve in annexed areas, and that it had a right to do so in these circumstances. I did not agree that the REMC held only an indeterminate permit as defined in the Public Service Commission Act. I still contend, as I did in my dissent in the *Statewide* case, that it is up to the Legislature to decide whether the rural electric cooperatives shall be subjected to the full regulatory scheme of the Public Service Commission Act. To date, they have not done so.

NOTE.—Reported in 301 N. E. 2d 191.