MONTGOMERY LIGHT & POWER COMPANY *v.* TOWN OF LINDEN, INDIANA.

[No. 27,398. Filed October 8, 1940.]

472

*Harding & Harding,* of Crawfordsville, for appellant.
*W. J. Sprow,* of Crawfordsville, for appellee.

SWAIM, J.—This is an action brought by appellee, Town of Linden, against Montgomery Light and Power Company, to acquire, by condemnation, such utility property belonging to said appellant, as was used in furnishing electric utility service to said town and to the consumers, who were residents of said town and the territory adjacent thereto. The appellant filed objections to the complaint entitled "Special Appearance of Defendant and Amended Demurrer and Objections to Complaint." These objections were overruled by the court and the defendant refused to plead further. The court, without a hearing, entered a judgment appointing appraisers. Whereupon the appellant prayed for and was granted an appeal to this court.

The appellant relies upon the alleged error of the court in overruling the objections of appellant to the appellee's complaint for reversal of the judgment.

The first point urged by the appellant is that the complaint of the appellee shows an attempt to condemn the Montgomery Light and Power Company, a public utility; that under the statute it is impossible to condemn a public utility and that, therefore, the objections to the complaint should have been sustained. The appellant is correct in its contention that the condemnation of a public utility is not contemplated by the statute. The statute expressly defines "public utility" as used in the act as the owner of a utility. Acts of 1933, ch. 190, § 1, § 54-105, Burns' 1933, § 13905, Baldwin's 1934; *Public Service Company of Indiana* v. *City of Aurora* (1939), 215 Ind. 311, 19 N. E. (2d) 255.

We cannot agree with the appellant, however, that a fair interpretation of the complaint herein shows an intention on the part of the appellee to condemn the public utility. The first paragraph of the complaint describes the Montgomery Light and Power Company as "The owner of the property hereinafter described and sought to be condemned; . . ." The complaint recites that the petition of the voters prayed that the board of trustees of said town acquire, purchase or condemn and operate "the utility property used and useful in furnishing electric utility service to said town and to consumers of said town and territory adjacent thereto . . . ". The complaint alleges that the property sought to be condemned was similarly described in the declaratory resolution adopted by the Board of Trustees of said town, declaring that it was necessary to acquire said property, and was also similarly described in the ordinance providing for a special election to be held on the question of acquiring said property, and in the ordinance approving the action of the voters in such special election.

The complaint further alleges that in the resolutions adopted by the trustees, authorizing and directing the officers of said town to offer to purchase said property from the appellant, the property was described as "its (Montgomery Light and Power Company's) public utility distribution system serving said Town and the consumers thereof, and including therein the distribution system known as the Cherry Grove Line . . ." The complaint contains an express statement that the property, which the plaintiff desires to condemn and acquire, is "the electric distribution system now owned by the defendant company used and useful in furnishing electric service to the Town of Linden and to the consumers of said town and territory adjacent thereto" and following this statement is an itemized list of the physical property to be included in such condemnation. The prayer of the complaint is that the plaintiff be adjudged and decreed to be the owner, by condemnation, of "the local electric distribution system of the defendant, Montgomery Light & Power Company, serving said Town of Linden, and the consumers therein and its consumers within the said territory adjacent thereto, as hereinabove described . . . ," and that the court appoint appraisers to assess the damages, to which said defendant may be entitled, by reason of the condemnation. In view of these descriptions of the property it cannot be seriously contended that the complaint was to condemn the Montgomery Light and Power Company, a public utility, although the words "public utility" were used in the titles of two of the ordinances in connection with this proceeding.

The proposition most seriously contended for by the appellant is that it was given no notice of a hearing

before the Board of Trustees on the petition of the qualified voters for the acquisition of the utility property and was, therefore, accorded no opportunity for a hearing on the question of the public necessity of the acquisition of said property by the town. The appellant insists that such notice and hearing are required by the provisions of the Acts of 1913, ch. 76, § 98 as amended by Acts of 1933, ch. 190, § 10, § 54-602, Burns' 1933, § 14021, Baldwin's 1934. The appellee contends that this proceeding is governed by the provisions of Acts of 1913, ch. 76, § 108, as amended by Acts of 1933, ch. 190, § 18, § 54-612, Burns' 1933, § 14029, Baldwin's 1934. Acts of 1913, ch. 76, § 98 only purports to cover the construction of a new plant or equipment by a municipality, where a public utility was then furnishing similar service. The Act required that in such a case there should be a public hearing for all parties interested before the public service commission to determine that public convenience and necessity required such additional municipal utility. Said section closes with the sentence "But nothing in this section shall be construed as preventing a municipality acquiring any existing plant by purchase or by condemnation as hereinafter provided." § 54-602, Burns' 1933, § 14021, Baldwin's 1934, is an amendment of this section of the 1913 act. The amended section transfers from the Public Service Commission to the municipal council the power to hear, determine and to declare by resolution that public necessity and convenience require such municipal utility. Section 54-602, Burns' 1933, § 14021, Baldwin's 1934, provides for a hearing by the municipal council to determine if public necessity and convenience require the construction or acquisition of such utility and also provides for a ten days notice of such hearing to the public utility furnish-

ing a *like* service in such municipality. This section of the statute expressly refers to § 54-612, Burns' 1933, § 14029, Baldwin's 1934 and is as follows: .

"That no municipality in this state shall hereafter construct and operate, or acquire and operate any such plant or equipment until and unless the voters of such municipality have voted so to do, in the manner hereafter provided in section 108 (section 54-612) hereof."

By § 54-612, Burns' 1933, § 14029, Baldwin's 1934, the legislature has clearly shown that it intended by the provisions of § 98 of said Acts of 1913 even as amended by § 10, ch. 190, Acts of 1933, only to provide a notice and a hearing on the question of public necessity, where the municipality was erecting or acquiring a new utility in a community where a utility of the same character was already in operation. Section 54-612, Burns' 1933, § 14029, Baldwin's 1934, provides that whenever a sufficient voters' petition for the acquisition of a utility is filed with the municipal council it shall be the duty of such municipal council to proceed as follows: "If said petition is to erect or construct a *new* utility and if there is already operating a utility of the same character in such city, said municipal council shall first determine as provided in section 98 (§ 54-602, Burns' 1933, § 14021, Baldwin's 1934) of this act, as hereby amended, if public convenience and necessity require the *establishment* of a like utility in such municipality. If such municipal council and the courts on review as provided in section 98 (§ 54-602, Burns' 1933, § 14021, Baldwin's 1934) of this act, as hereby amended, shall determine that such *additional* utility is necessary, *or if said petition is to purchase, condemn, acquire, or lease a public utility then operating* in said municipality, said council shall submit to the voters of said municipality, at a special election to be held . . . at the

earliest possible date the question whether such municipality shall purchase, condemn or construct and operate such utility, as the case may be." The remainder of the section provides for the manner of holding such election and the subsequent steps to be taken in the acquisition of such property. It would seem to be clear from the language of this section that the legislature did not intend to require a hearing by the municipal council on the question of public necessity, where the municipality is attempting to acquire existing utility property from a public utility then operating such property within the municipality, but only intended to require such hearing and a notice to the public utility in a case where the municipality is about to erect or construct a new utility property, which will be in competition with a utility already operating in said municipality.

The amendment of another section of said act is significant on this question. Section 104, Acts of 1913, provides for an action in the Circuit or Superior Court, where the utility has its principal place of business, against the public utility as defendant to determine as to the necessity of such utility being taken by the municipality where the municipality shall have determined to acquire *an existing plant*. The section provides for ten days notice to the utility and trial of the question before a jury unless the petitioners waive a jury. In the 1933 Acts, ch. 190, § 14, § 54-608, Burns' 1933, § 14025, Baldwin's 1934, this section is amended to read as follows:

> "If the municipality shall have determined to acquire an existing plant of any public utility then operating under a license, permit or franchise existing at the time this act takes effect, such municipality may bring an action in the circuit or superior court of the county where such municipality is located against such utility as defendant for the condemnation of the property thereof."

Thus we see that in this section, also, the legislature dropped the requirement for a hearing on the question of public necessity where as here the municipality was seeking to acquire an *existing* utility.

We, therefore, hold that the appellee herein was correct in following the procedure set out in § 54-612, Burns' 1933, § 14029, Baldwin's 1934, and that since the action was to acquire an existing utility by condemnation the appellant was not entitled to notice of a hearing before the municipal council for the determination of the question of the public necessity of such acquisition.

The appellant also contends that the complaint shows that the election called to authorize the municipality to acquire the property involved was under an "ordinance for special election to *purchase* electric public utility etc." This apparently was the title of the ordinance, but according to the complaint the ordinance ordered a special election to be held on the question of acquiring, purchasing or condemning said utility property. The allegations of the complaint as to the holding of said election were sufficient. See also *Southern Ind. Gas, etc.* v. *City of Booneville* (1939), 215 Ind. 552, 20 N. E. (2d) 648.

While the Public Service Commission Act (Acts of 1913, ch. 76, as amended by Acts of 1933, ch. 190, §§ 54-601, et seq., Burns' 1933, §§ 14020 et seq., Baldwin's 1934) expressly provides that a municipality may construct or acquire utility property within the boundaries of such municipal corporation, and also within six miles of the corporate limits of such municipality, without the approval of the Public Service Commission, the appellant contends that the Rural Electric Membership Act (as amended in 1937, Acts of 1937, ch. 258, p. 1217, §§ 55-4402 et seq.,

Burns' 1933 (Supp.), §§ 5027-2 et seq., Baldwin's Supp. 1937) prohibits such municipality from acquiring utility property located outside of its corporate limits without the consent of the Public Service Commission. Section 10 of the said Rural Electric Membership Act *supra* provides that "no person, co-partnership, or corporation not formed . . . under this act, shall construct, own, manage or control any system within any territory included in that described in the articles of incorporation of, and to be served by, any corporation formed . . . under this act, *to any extent greater than such construction, ownership, operation, management, control or system [as] actually exists on the effective date of this act or on the date when such territory is first included in that to be served by such corporation formed . . . under this act*" without securing from the Public Service Commission, after a hearing, a declaration that public convenience and necessity requires such construction or acquisition. The language of this act plainly indicates that the legislature had in mind that there should be no encroachment, without approval of the Public Service Commission, by any other person or corporation not formed under the act, on territory already appropriated and being served by a corporation formed under the act. The record in this case does not show that the appellee herein was attempting to acquire any property within territory being served by a rural electric membership corporation. The record in this case does show that the Montgomery Light and Power Company had been serving the Town of Linden and adjacent territory for many years prior to this action being brought. The Rural Electric Membership Act provides that the territory to be served by such a corporation shall be described in its articles of incorporation, and expressly prohibits such corporation from

including in its territory "any territory either within or without any incorporated city or town already being served with energy by any public or municipally owned utility." Even if the appellant were correct in its contention that this provision of the Rural Electric Membership Act supersedes the provisions of the Public Service Commission Act and requires consent of the Public Service Commission for an extension of the service by a municipality into territory being served by a Rural Electric Membership Corporation the appellant has not shown that the facts of this case bring it within the proposition for which appellant contends.

The appellant also contends that the amended demurrer and objections, which it filed to the complaint, admitted only the facts pleaded in the complaint and that the rest of its pleading expressly denied other facts essential to appellee's right to condemnation; and that the court should have had a hearing on the answer part of the pleading which denied facts essential to appellee's right of action. This court has held, however, that while questions of fact may be presented under objections filed to a complaint of this nature evidence supporting such allegations of fact must be presented by the record or there must be a proper showing that competent evidence, in support of such tendered issues, was offered and rejected by the court, in order for any question concerning such facts to be presented to this court. *Morrison* v. *Indianapolis, etc. R. Co.* (1905), 166 Ind. 511, 76 N. E. 961, 77 N. E. 744; *Miller* v. *Southern Indiana Power Co.* (1915), 184 Ind. 370, 111 N. E. 308.

All of the other questions which the appellant seeks to raise are questions of fact which are not properly before us.

Finding no reversible error the judgment of the court is affirmed.

NOTE: Reported in 29 N. E. (2d) 209.