INDIANA AND MICHIGAN ELECTRIC COMPANY, AN INDIANA CORPORATION *v.* THE CITY OF ANDERSON, INDIANA, ROBERT L. ROCK, MAYOR OF THE CITY OF ANDERSON, INDIANA, CHESTER T. LAWRENCE, LLOYD R. MELLENTHIN AND RAYMOND H. NUCE, MEMBERS OF THE BOARD OF PUBLIC WORKS, OF THE CITY OF ANDERSON, INDIANA, WILLIAM E. ZUCK, EXECUTIVE SECRETARY OF THE BOARD OF PUBLIC WORKS OF THE CITY OF ANDERSON, INDIANA, MARIS D. HALL, SUPERINTENDENT OF THE CITY LIGHT & POWER DEPARTMENT OF THE CITY OF ANDERSON, INDIANA, EMERALD GLEN, INC., AN INDIANA CORPORATION, GENE BAUER

[No. 2-1176A418. Filed May 17, 1978. Rehearing denied July 24, 1978. Transfer denied October 10, 1978.]

*Gerald P. Shine, Shine & Shine*, of Anderson, *Thomas W. Yoder, Livingston, Dildine, Haynie & Yoder*, of Fort Wayne, for appellant.

*Marvin C. Clanin*, of Anderson, *Parr, Richey, Obremskey & Morton*, of Lebanon, for appellees.

## CASE SUMMARY

BUCHANAN, C.J. — Plaintiff-Appellant Indiana & Michigan Electric Company (I & M) appeals from an adverse decision by the trial court in its suit for injunctive relief and damages against Defendants-Appellees Emerald Glen, Inc., Gene Bauer (Bauer) and the City of Anderson (Anderson), claiming it has a territorial service right entitled to protection.

We reverse.

## FACTS

This is a dispute over who will reap the benefit of providing electrical service to a previously unpopulated area, transformed by urbanization into a modern residential and commercial development.

Emerald Glen Development is located in Union Township, Madison County, Indiana, and within six miles of the corporate limits of the City of Anderson, Indiana. A formal request for electrical service to Emerald Glen Development was made to Anderson's municipally-owned utility by Emerald Glen, Inc. and Bauer on May 7, 1975.

On September 17, 1975, Anderson installed an electrical distribution line into the Emerald Glen Development and began providing electrical service.

I & M claims the right to serve Emerald Glen Development through a certificate of public convenience and necessity. The certificate was granted on September 15, 1937, to Indiana General Service Company, I & M's predecessor, by the Public Service Commission of Indiana after a public hearing on the matter.

On October 2, 1975, I & M filed a complaint for preliminary and permanent injunction and for damages in the Madison Superior Court Two. Anderson filed a Motion to Dismiss on December 12, 1975, claiming that the trial court lacked jurisdiction and that the complaint failed to state a claim for relief. A similar Motion to Dismiss was filed on January 7, 1976, by Emerald Glen, Inc. and Bauer.

A hearing on I & M's application for preliminary injunction was held

on January 7. Both sides presented testimony and documentary evidence. Following submission of briefs and oral argument, the trial court sustained the Motion to Dismiss by issuing the following:

> Comes now the Court, and being duly advised, now sustains motions to dismiss of respective defendants, pursuant to Trial Rule 12(b)6, upon the following Court findings:    That I.C. 8-1-2-90 provides that defendant City of Anderson may operate within a radius of six miles from its corporate limits without Public Service Commission approval;
> That the territory subject of this cause is within such six mile radius;
> That both defendant City of Anderson and plaintiff and its predecessors provide service to the territory in question, both prior to and after September 15, 1937;
> That there is no evidence that plaintiff's assignors had rights within the six mile radius prior to 1937;
> That even if plaintiff's assignors had such rights, or if the 1937 Public Service Commission order created such rights in plaintiff, defendant would not be bound by such determination because defendant was not a party to such proceedings and defendant did not receive notice as required by Indiana Code 8-1-13-18(b). Defendant City of Anderson's counter-claim for preliminary injunction is denied.

I & M appeals.

## ISSUES

ISSUE ONE —    Was Anderson entitled to provide electrical service anywhere within a six-mile radius of its corporate limits without a Certificate of Public Convenience and Necessity from the Public Service Commission of Indiana?

ISSUE TWO —    Did the service rights awarded by the 1937 Certificate include the Emerald Glen development area?

ISSUE THREE — Was Anderson not bound by the 1937 Certificate of Public Convenience and Necessity because it was not a party to nor received written notice of the PSC hearing granting the Certificate?

As to Issue One, Anderson contends the trial court correctly held a municipality has statutory authority to operate its electric utility within a six mile radius of the municipality's corporate limits without PSC approval. I & M disputes this on two grounds. First, that the

language of IND. CODE 8-1-2-86 limits its operation to a situation not present here. Second, protection provided Rural Electric Membership Corporations by IND. CODE 8-1-13-18(b) must be read to also protect private investor owned utilities or it violates the equal protection clause of the Indiana Constitution.

As to Issue Two, Anderson contends that the 1937 Certificate did not include any territory in Madison County. On the other hand, I & M asserts "uncontradicted evidence" shows Emerald Glen lies within that territory.

As to Issue Three, Anderson asserts the trial court correctly determined Anderson could not be bound by the 1937 PSC hearing because it was not a party to the proceedings and did not receive written notice as required by IND. CODE 8-1-13-18(b). I & M argues that notice "published as required by law" was sufficient to bind Anderson to the PSC hearing results.

Because of our decision on these issues, other arguments raised by I & M need not be considered.

Before turning to these three issues, we preliminarily address the trial court's treatment of the Motions to Dismiss.

## INITIAL DETERMINATION

When matters outside the pleadings are presented and not excluded by the court, a Motion to Dismiss must be treated as a motion for a summary judgment.[1] *Salem Bank & Trust Co. v. Whitcomb* (1974), 261 Ind. 614, 308 N.E.2d 707; *Middleton Motors, Inc. v. Ind. Dept. of State Revenue* (1977), Ind. App., 366 N.E.2d 226; *Middlekamp v. Hanewich* (1977), 173 Ind. App. 571, 364 N.E.2d 1024. Failure to do so constitutes grounds for reversal. *Salem Bank & Trust Co. v. Whitcomb, supra.*

---

1. Indiana Rules of Procedure, Trial Rule 12(B)(8) states:

   If, on a motion, asserting the defense number (6), to dismiss for failure of the pleading to state a claim upon which relief can be granted, matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56. In such case, all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56.

In this case admissions and interrogatories were filed, and testimony was heard prior to the trial court's ruling on the Motions to Dismiss.

Despite a specific statement that its ruling was "pursuant to Trial Rule 12(b)6," the trial court designated the issues upon which it found no genuine issue as to any material fact . . . as required by TR. 56(C). The adequacy of the ruling to serve as a summary judgment was not challenged in the Motion to Correct Errors. Therefore, we will treat the trial court's judgment as a summary judgment.

## DECISION

*Issue One*

*CONCLUSION*—Anderson has statutory authority to extend its electrical service within a six-mile radius of its corporate limits without PSC approval.

The "six-mile" authority on which Anderson relies is clearly established by two statutes. IND. CODE 8-1-2-86 states:

> No license, permit or franchise shall be granted to any person, copartnership or corporation to own, operate, manage or control any plant or equipment of any public utility in any municipality where there is in operation a public utility engaged in similar service under a license, franchise or permit without first securing from the commission a declaration, after a public hearing, of all parties interested, that public convenience and necessity require such second public utility; Provided, That *any municipality* may purchase, condemn, and operate, or construct and operate, a utility in such municipality for the purpose of transportation, production, transmission, delivery, sale and furnishing of heat, light, water and/or power to such municipality, and/or the public *in and within six (6) miles of the limits of such municipality, without the consent of said commission*, although there is operating in said municipality a public utility engaged in a similar service under a license, franchise or indeterminate permit.
>
> Any existing permit, license or franchise which shall contain any term whatsoever interfering with the existence of a second public utility is hereby declared to be against public policy and is hereby amended in such manner as to permit a municipality to grant a license, franchise or permit for the operation of such second public utility pursuant to the provision of this act. (Emphasis added)

Additionally, the appropriate part of IND. CODE 8-1-2-90 restates a municipality's power within a six-mile radius of its corporate limits:

Any municipality in the state of Indiana is hereby empowered, subject to the provisions of this act applicable thereto, to own, lease, erect, establish, purchase, condemn, construct, acquire, hold and operate any utility within the boundaries of such municipality, and *within a radius of six (6) miles from the corporate limits of such municipality, without the consent or control of any department, bureau or commission* other than the municipal council of the municipality in which such utility may be operated. *No certificate of public convenience and necessity from any commission or other department of the state, except as in this section provided, shall be required* as a condition precedent to the constructing, acquiring, leasing, purchasing, condemning, owning or operating by any municipality of any utility where one engaged in the same service already exists. (Emphasis added)

The plain and unambiguous language of the statutes eliminates the need for PSC approval when a municipality extends its electrical service within a six-mile radius of its corporate limits.

I & M's contention that IND. CODE 8-1-2-86 is limited in its application to situations in which duplicate services are being provided in the municipality by a second utility is singularly unsupported by any cogent argument or authority. Nor does this argument have any cogency as to the wording of IND. CODE 8-1-2-90.

I & M maintains that IND. CODE 8-1-13-18(b)[2] requires PSC approval for

---

2. (b) Except as provided in the last sentence of this subdivision (b) no person, copartnership or corporation not formed, or admitted to do business in this state, under this act shall construct, own, manage or control any system within any territory included in that described in the articles of incorporation of, and to be served by, any corporation formed, or admitted to do business in this state, under this act, to any extent greater than such construction, ownership, operation, management, control or system actually exists on the effective date of this act or on the date when such territory is first included in that to be served by such corporation formed, or admitted to do business in this state, under this act, whichever date is later, unless or until the following condition shall have been met, to-wit: The one seeking such construction, ownership, operation, management or control shall first file, or cause to be filed, with the public service commission a petition therefore and obtain from such commission a declaration that public convenience and necessity require the respective construction, ownership, operation, management or control. Before making such declaration, the public service commission shall ascertain whether the proposed construction, ownership, operation, management or control, is to be made or exercised within territory which any corporation formed, or admitted

any encroachment by a municipality (or any other utility) upon the territory of an REMC, and, therefore, PSC approval is also required for encroachments upon the territory of an investor owned utility ... Otherwise the statute violates the equal protection clause of the Indiana Constitution, Article 1, Section 23.[3] Thus I & M would nestle under the protective wing of a statute designed to aid REMC's ... a unique stance.

Even if IND. CODE 8-1-13-18(b) requires PSC approval for a municipality's encroachment upon REMC territory, the statute does not apply to a private investor owned utility. *Montgomery Light & Power Co. v. Town of Linden* (1940), 217 Ind. 471, 29 N.E.2d 209. Nor does such differing treatment violate the equal protection provision of our Constitution.

The equal protection clause has never prevented the Legislature from indulging in reasonable legislative classifications. Statutes are presumed valid and will be upheld if the classification has any rational or reasonable basis, unless it involves fundamental rights or a suspect classification. *Sidle v. Majors* (1976), 264 Ind. 206, 341 N.E.2d 763; *Decatur County Rural Electric Membership Corp. v. Public Service Co. of Indiana* (1973), 261 Ind. 128, 301 N.E.2d 191; *State v. McDonald* (1973), 260 Ind. 565, 297 N.E.2d 826.

Classifications involving utility service areas involve neither a suspect classification nor fundamental rights. *Decatur County REMC v. Public Service Co. of Indiana, supra.* Consequently, these statutes will be upheld if there is any rational basis for the classification.

to do business in this state, under this act, or any other corporation of public utility, is at that time, by any former approval, declaration or franchise by such commission, authorized to serve; if that be the fact, then unless the written consent of each such corporation or utility to the granting of such petition be filed with the commission, the commission shall hold a formal hearing upon such petition after giving the petitioner and each such corporation or public utility, whose territory may be affected, at least ten (10) days' written notice of the time, place, and purpose of such hearing; the petitioner and each such corporation or utility shall be entitled to be heard and shall have process to enforce the attendance of witnesses. Any declaration or public convenience and necessity obtained under this subdivision (b) may be transferred by the one obtaining the same or by any subsequent transferee, in like manner as a franchise granted by the public service commission, and such transferee, with respect to the construction, ownership, management or control, covered by such declaration, need not file the petition otherwise required by this subdivision (b).

3. The General Assembly shall not grant to any citizen, or class of citizens, privileges or immunities, which, upon the same terms, shall not equally belong to all citizens.

Historically REMC's were formed to provide electrical service to rural areas not being adequately served by for-profit investor-owned utilities. REMC's are non-profit ventures, controlled and owned by the membership (the customers). They make large investments to provide necessary electrical service in sparsely populated areas — areas where revenue generated by the investments must, of necessity, fall far below that of urban areas. Conversely, private investor-owned utilities are for-profit corporations owned by shareholders. By their nature, they serve areas more likely to produce a profitable return for their investment.

Thus the nature of the REMC's and the generally rural character of the territories served constitute a rational basis upon which the Legislature could act.

It logically follows that I & M as a private investor-owned utility is not entitled to the preferential treatment afforded by IND. CODE 8-1-13-18(b) . . . and such denial does no violence to the equal protection clause.

*Issue Two*

*CONCLUSION* — This case must be reversed for the trial court's failure to determine service rights to Emerald Glen Development under I & M's Certificate of Public Convenience and Necessity.

The trial court made no specific finding as to what territory was included in the 1937 certificate. Its only finding relating to that issue was that both Anderson and I & M (and its predecessors) provided service to the area before and after September 15, 1937, and that there was no evidence that I & M's assignors had rights within a six mile radius of Anderson prior to 1937.

These two findings do not determine I & M's rights to serve the Emerald Glen Development under its certificate.

Service rights under the certificate depend upon two factors:

1. Was the Emerald Glen area included in the geographic region in which service rights were awarded by the certificate; and

2. If so, was the area excluded by the following provision in the certificate;

In any and every case, excepting any territory within the corporate limits of any incorporated city or town, and also excepting any establishments located in rural territory outside the corporate limits of any incorporated cities or towns, in said territory, which are already being served with electric energy by any public or municipally owned utility, or which can be so served merely by connecting up with an already existing secondary of any such public or municipally owned utility.

These two material issues were not addressed by the trial court, but they must be decided in order to determine service rights under the certificate.

If I & M was given no service rights in the Emerald Glen area by the 1937 certificate, it cannot have any compensable property interests therein which are entitled to protection or compensation. If, however, the Emerald Glen area was included in the certificate, then I & M *may* have a compensable property interest.

This is so because a municipality may not seize or interfere with compensable property interests even under statutory authority without first making proper compensation. Otherwise it runs afoul of Article 1, § 21 of the Indiana Constitution.[4] *See City of Greenfield v. Hancock County Rural Electric Membership Corp.* (1971), 256 Ind. 15, 266 N.E.2d 799. *See also Indiana & Michigan Electric Co. v. Whitley County Rural Electric Membership Corp.* (1974), 160 Ind. App. 446, 312 N.E.2d 503; *Hendricks County Rural Electric Membership Corp. v. Public Service Co. of Indiana, Inc.* (1971), 150 Ind. App. 503, 276 N.E.2d 852; *Morgan County Rural Electric Membership Corp. v. Public Service Co. of Indiana* (1970), 253 Ind. 541, 255 N.E.2d 822.

The mere right to serve an area under a certificate of public convenience and necessity is not a compensable property right. *Indiana & Michigan Electric Co. v. Whitley Co. Rural Electric Membership Corp., supra; Hendricks County Rural Electric Corp. v. Public Service Co. of Indiana, Inc., supra.*

---

4. Ind. Constitution Art. 1, § 21:

No man's particular services shall be demanded, without just compensation. No man's property shall be taken by law, without just compensation; nor, except in case of the State, without such compensation first assessed and tendered.

But an absence of actual property in a service area does not preclude the existence of a compensable property interest. *City of Greenfield v. Hancock County Rural Electric Membership Corp., supra; Indiana & Michigan Electric Co. v. Whitley County REMC, supra.*

The question as to whether there has been an interference with a compensable interest, and if so, to what extent, is a question of fact upon which evidence must be heard. *City of Greenfield v. Hancock County REMC, supra; Indiana & Michigan Electric Co. v. Whitley County REMC, supra.*

Without a determination of service rights under the 1937 certificate, the trial court could not properly decide whether I & M was entitled to injunctive relief or damages for interference with a compensable property interest. Its summary judgment was therefore in error, and must be reversed.

*Issue Three*

*CONCLUSION* — The trial court incorrectly held that even if I & M had service rights to Emerald Glen under the certificate, Anderson was not bound by the certificate because it was neither named as a party to nor given notice of the hearing at which it was issued "as required by IND. CODE 8-1-13-18(b).[5]

---

5.   IND. CODE 8-1-13-18(b) states:

(b)   Except as provided in the last sentence of this subdivision (b) no person, copartnership or corporation not formed, or admitted to do business in this state, under this act, shall construct, own, manage or control any system within any territory included in that described in the articles of incorporation of, and to be served by, any corporation formed, or admitted to do business in this state, under this act, to any extent greater than such construction, ownership, operation, management, control or system actually exists on the effective date of this act or on the date when such territory is first included in that to be served by such corporation formed, or admitted to do business in this state, under this act, whichever date is later, unless or until the following condition shall have been met, to-wit: The one seeking such construction, ownership, operation, management or control shall first file, or cause to be filed, with the public service commission a petition therefor and obtain from such commission a declaration that public convenience and necessity require the respective construction, ownership, operation, management or control. Before making such declaration, the public service commission shall ascertain whether the proposed construction, ownership, operation, management or control, is to be made or exercised within territory which any corporation formed, or admitted to do business in this

The trial court relied on a statutory provision not passed until two years after the issuance of the certificate to I & M's predecessor in 1937. This cannot be done.

The controlling provision in force in 1937 was Acts of the General Assembly, 1937, Chapter 258, Sec. 18, page 1225, which provides:

(b)   No person, copartnership, or corporation not formed under this act, shall construct, own, manage, or control any system within any territory included in that described in the articles of incorporation of, and to be served by, any corporation formed under this act, to any extent greater than such construction, ownership, operation, management, control or system [as] actually exists on the effective date of this act or on the date when such territory is first included in that to be served by such corporation formed under this act, whichever date is later, unless or until the following condition shall have been met, to-wit:   The *one seeking such construction, ownership, operation, management or control shall first file, or cause to be filed, with the public service commission a petition therefor and obtain from such commission, after a public hearing advertised and conducted as provided for the hearing mentioned in section 5 of this act,* a declaration that public convenience and necessity require the respective construction, ownership, operation, management or control. (Emphasis added)[6]

state, under this act, or any other corporation of public utility, is at that time, by any former approval, declaration or franchise by such commission, authorized to serve; if that be the fact, then unless the written consent of each such corporation or utility to the granting of such petition be filed with the commission, the commission shall hold a formal hearing upon such petition after giving the petitioner and each such corporation or public utility, whose territory may be affected, at least ten (10) days written notice of the time, place, and purpose of such hearing; the petitioner and each such corporation or utility shall be entitled to be heard and shall have process to enforce the attendance of witnesses. Any declaration or public convenience and necessity obtained under this subdivision (b) may be transferred by the one obtaining the same or by any subsequent transferee, in like manner as a franchise granted by the public service commission, and such transferee, with respect to the construction, ownership, management or control, covered by such declaration, need not file the petition otherwise required by this subdivision (b).

6.   The advertisement required "in Section 5 of this Act" specifies the type and location of the publications to be used. The appropriate part of IND. CODE 8-1-13-5 states:

. . . [The] commission shall set the said petition for public hearing and shall give notice of the time and place of such hearing by publication one (1) newspaper printed and published in each of the counties in which the said corporation proposes to carry on its operations, which publication shall be had at least ten (10) days prior to the date set for such hearing, the cost of such publications to be paid by the petitioners at the time of filing said petition.

This act required only that a properly advertised hearing must be held prior to issuing a certificate of public convenience and necessity. There was no mandate that Anderson be named a party to or given written notice of the hearing.

Assuming without deciding that the present statute would require Anderson be named a party and given written notice of such a hearing, such was not the case in 1937.

The decision of the trial court is reversed and remanded for further action not inconsistent with this decision.

Sullivan, J. concurs in result.

Lowdermilk, J. (by designation) concurs.

NOTE—Reported at 376 N.E.2d 114.