JOHNSON COUNTY RURAL ELECTRIC MEMBERSHIP CORPORATION *v.* PUBLIC SERVICE COMPANY OF INDIANA, INC.

[No. 2-776A265. Filed July 5, 1978.]

*Parr, Richey, Obremskey & Morton* of Lebanon, *Rogers, Tompkins & Gesse*, of Franklin, for appellant.

*Duejean C. Garrett, Greg K. Kimberlin*, of Plainfield, for appellee.

HOFFMAN, J. — This is a judicial review of a final order by the Public Service Commission of Indiana (Commission) granting petitioner-appellee Public Service Company of Indiana, Inc. (PSI), a certificate of public convenience and necessity to provide electrical service to territory formerly included in the service territory of respondent-appellant Johnson County Rural Electric Membership Corporation (Johnson REMC). The order

of the Commission was issued pursuant to the provisions of IC 1971, 8-1-13-18(b) (Burns Code Ed.).

On appeal Johnson REMC challenges the constitutionality of 8-1-13-18(b) and contends that the order of the Public Service Commission is not supported by sufficient evidence and deprives it of its property without just compensation.

The record reveals the following:

On October 2, 1973, PSI filed a petition seeking a declaration of public convenience and necessity for the construction, ownership, operation, management and control of electrical facilities to be used to render service in part of a 525-acre residential, commercial and industrial development called Valle Vista and located immediately to the east of Greenwood, Indiana. The Articles of Incorporation of Johnson REMC and Indiana Statewide Rural Electric Cooperative, Inc. included Valle Vista in the description of its service territory.

Johnson REMC filed a motion to dismiss on November 16, 1973, alleging that the petition failed to state a claim upon which relief could be granted. PSI filed an answer in opposition on April 11, 1974.

On May 9, 1974, Johnson REMC filed a cross-petition, alleging that during the 1940's PSI was granted certain customer releases in the territory of Johnson REMC, that PSI discontinued its service to these customers in 1971, and that such termination of service ended PSI's right to provide electrical service in that territory. The cross-petition further alleged that PSI rebuilt and re-energized electric utility lines into Johnson REMC territory in violation of law and requested an order directing PSI to remove such lines. PSI filed a motion to strike the cross-petition on May 10, 1974.

The Commission heard argument on the motion to dismiss and the motion to strike the cross-petition prior to the introduction of evidence at the hearing. Johnson REMC's motion to dismiss was taken under advisement, and PSI's motion to strike the cross-petition was denied.

The Commission issued its order on May 19, 1976, granting PSI a certificate of public convenience and necessity to serve a substantial portion of Valle Vista. The order of the Commission contained a statement of fact and then made the following findings and order:

" 1. That the Commission has jurisdiction over Petitioner [PSI] and Johnson REMC as well as the general subject matter of the Petition herein.

2. That Yeager Contracting Company, Incorporated is developing a 525 acre Planned Unit Development on the southeast side of Greenwood, Indiana, known as Valle Vista, which will include single family residential lots, apartment and condominium buildings, several commercial complexes, an industrial park, and a golf course and clubhouse. That portions of the development have already been constructed and other portions are under construction.

3. That the Valle Vista development will be served underground electric utility service.

4. That both Petitioner and Johnson REMC presently have service rights inside the Valle Vista development.

5. That the Valle Vista development is contiguous to the City of Greenwood; that approximately one-half of the development has been annexed into the City of Greenwood; and that it is possible that the entire development will be annexed to the City of Greenwood.

6. That Petitioner is the franchised electric utility serving the City of Greenwood.

7. That underground service to Valle Vista by both Petitioner and Johnson REMC as the service boundaries now exist would involve a substantial duplication of electric facilities, would inconvenience the customers of both utilities in Valle Vista, and would not be in the public interest.

8. That Petitioner is presently rendering service in the western and southern portions of the development, and Johnson REMC is presently rendering service to a motel, service station and gift shop in the extreme northeastern portion of the development.

9. That the system being used by Johnson REMC to render its existing service inside the development to the motel, service station and gift shop consists of underground taps off of an existing three phrase overhead line.

10. That Johnson REMC has the capacity and facilities presently in place to continue rendering its existing service without any additional capital expenditures.

11. That the Johnson REMC's service to the motel, service station and gift shop is electrically severable and involves no substantial duplication of facilities needed to serve the remaining portion of the development.

12. That the entire Valle Vista development, excluding the motel, service station and gift shop presently being served by Johnson REMC, should be served by one electric utility.

13. That service of the entire development by Petitioner, excluding the motel, service station and gift shop presently being served by Johnson REMC, would avoid the wasteful duplication of electric facilities.

14. That Petitioner can serve the Johnson REMC portion of Valle Vista with less expense than can Johnson REMC.

15. That Petitioner can render more reliable service to the Johnson REMC portion of Valle Vista than can Johnson REMC.

16. That the plan of service of Petitioner is more economically feasible than the plan of Johnson REMC.

17. That Petitioner has historically rendered electric utility service to the area now composing Valle Vista.

18. That Petitioner is ready, willing and able to furnish adequate service to the entire Valle Vista development.

19. That Petitioner has a great deal more experience in rendering underground electric service than does Johnson REMC.

20. That service of Valle Vista load would have less of a financial impact on Petitioner than on Johnson REMC.

21. That Petitioner is better able to serve the Johnson REMC portion of Valle Vista than is Johnson REMC.

22. That in order for new delivery points to be established for Johnson REMC, the provisions of the Interconnection Agreement referred to above and the Order of this Commission issued on June 25, 1971, in Cause No. 32032, must be com-

plied with, and that such provisions were complied with only as to a delivery point in Section 35 or 36, Range 4 East, Township 14 North, Johnson County, Indiana.

23. That Yeager Contracting Company, Incorporated has expressed no preference with regard to electric utilities.

24. That public convenience and necessity require the construction, ownership, operation, management and control by Petitioner of the required additional electric lines and facilities for the rendering of electric service in the area petitioned for in this cause, excluding only the motel, service station and gift shop presently being served by Johnson REMC, and it should and will so ordered.

IT IS THEREFORE ORDERED BY THE PUBLIC SERIVCE COMMISSION OF INDIANA that it be and there is hereby issued to Public Service Company of Indiana, Inc. (Petitioner), a declaration that public convenience and necessity require the construction, ownership, operation, management and control by Petitioner of such electric lines and facilities as will be from time to time necessary for the rendering of electric service to that parcel of land situated in Pleasant Township, Johnson County, Indiana, and located in the following area: [There follows a legal description of the land.] and Petitioner is hereby authorized and permitted to construct, own, operate, manage and control such electric lines and related facilities necessary to render service to the above described area, excluding only the motel, service station and gift shop presently being served by Johnson REMC.

IT IS FURTHER ORDERED THAT nothing contained in this order shall affect the application of Section 18 a of the REMC Act with respect to the territory excluded from this order.

IT IS FURTHER ORDERED that in view of the disposition of this matter that Respondent's Cross-Petition be denied.

IT IS FURTHER ORDERED that Petitioner offer to purchase from the Respondent the underground electric facilities of Respondent presently in place inside the Valle Vista development, at a price

representing the reproduction cost new less depreciation thereof, excluding only those facilities used to serve the motel, service station and gift shop located in the extreme northeastern portion of the development.

IT IS FURTHER ORDERED that this order shall be effective on and after [May 19, 1976]."

Johnson REMC contends that IC 1971, 8-1-13-18(b) (Burns Code Ed.), is unconstitutional because it permits a non-REMC to petition the Public Service Commission for a certificate of public convenience and necessity to serve territory described in the Articles of Incorporation of an REMC without permitting an REMC to likewise seek a declaration of public convenience and necessity to serve in non-REMC areas. This, it is said, violates the provision of the Indiana Constitution requiring laws to be general and of uniform operation throughout the state[1] as well as the equal protection provisions of both the state[2] and federal[3] constitutions.

Statutes are presumed valid and the burden is upon the challenger to overcome such presumption. In the case at bar, appellant has not met this burden. Johnson REMC presents only the bald assertion that the foregoing statute violates Art. 4, § 23 of the Indiana Constitution.[4] And, with respect to the equal protection provisions of the state and federal constitutions, Johnson REMC sets forth only the legislative classification and describes the treatment of each class. If neither a fundamental right nor a suspect classification is involved, the statute will be upheld if it is reasonable and bears a fair and substantial relationship to a legitimate state purpose.

---

1. Ind. Const. art. 4, § 23.

2. Ind. Const. art. 1, § 23.

3. U.S. Const. amend. XIV.

4. Insofar as appellant raises an equal protection claim under Art. 4, § 23, the legislative classification will be upheld if the objects of legislative classification bears a relationship to the purpose of the Act which inheres in the subject matter so that the classification is not arbitrary. *Evansville-Vanderburgh, etc., et al. v. Kamp, etc.* (1960), 240 Ind. 659, 168 N.E.2d 208. Appellant, however, has not attempted to challenge the statute in such a manner.

*Sidle v. Majors* (1976), 264 Ind. 206, 341 N.E.2d 763;

*Decatur Co. REMC v. Pub. Serv. Co., Inc.* (1973), 261 Ind. 128, 301 N.E.2d 191.

A public utility is not a suspect classification, and the privilege of providing electrical service is not a fundamental right. *Decatur Co. REMC v. Pub. Serv. Co., Inc., supra.* Johnson REMC does not attack the reasonableness of the classification nor its relationship with the purpose of the legislation creating it. It has thus failed in its burden of proof.

It should be noted, however, that the constitutionality of 8-1-13-8(b), *supra*, has been upheld by this Court in *Indiana & Mich. Elec. Co. v. The City of Anderson, et al.*, 176 Ind.App. 410, 376 N.E.2d 114. There it was stated that the nature of REMC's and the generally rural character of the territories served constitute a rational basis for the legislative enactment.

Appellant next contends that the order of the Public Service Commission is not supported by substantial evidence and therefore is contrary to law.

An assignment of errors that the order of the Commission is contrary to law is sufficient to present both the sufficiency of the facts found to sustain the order and the sufficiency of the evidence to sustain the findings of fact. IC 1971, 8-1-3-1 (Burns Code Ed.). Such statute provides a two-tier standard of review of Public Service Commission orders.

At the first level of review, the foregoing statute requires the Commission's decision to contain specific findings on all the factual determinations material to its ultimate conclusions. This level of review examines the "reasonableness" of the conclusions of ultimate fact inferred by the Commission from its finding of basic facts.

*L.S. Ayres & Co. v. Indianapolis Power & Light Co.* (1976), 169 Ind.App. 653, 351 N.E.2d 814, 821-824 (transfer denied);

*City of Evansville v. Southern Ind. Gas. & Elec. Co.* (1975), 167 Ind.App. 472, 339 N.E.2d 562, 571-573.

The second level of review delineated by the statute requires the determination of whether there is substantial evidence in light of the whole record to support the Commission's findings of basic facts.

*L. S. Ayres & Co. v. Indianapolis Power & Light Co., supra;*
*City of Evansville v. Southern Ind. Gas & Elec. Co., supra.*

In reviewing the sufficiency of the evdience to sustain the findings of fact, this Court may not weigh the evidence or judge the credibility of witnesses. *Stewart Trucking, Inc. v. Bunn Trucking, Inc.* (1972), 151 Ind.App. 157, 278 N.E.2d 310 (transfer denied).

Although Johnson REMC concedes that this is the appropriate standard of review, it has nevertheless failed to state which arguments pertain to which level of review. However, our examination of appellant's argument discloses that there are two attacks focused upon the reasonableness requirement of the first level of factual review. In this respect Johnson REMC contends that it is improper to base an order upon considerations of annexation of approximately one-half of the development by the City of Greenwood and on consideration of how the sewage facilities were to be treated. Although Johnson REMC is correct in stating that the act of annexation does not itself affect the electrical service territories of the respective parties until there is a condemnation pursuant to IC 1971, 8-1-13-19 (Burns Code Ed.), it is nevertheless a factor which may be considered in determining public convenience and necessity under IC 1971, 8-1-13-18(b), *supra*. The sewage treatment facilities were not the subject of a basic finding of fact by the Commission. Although there was evidence relating to such facilities, the Commission did not render its decision in consideration thereof.

At the second level of review, Johnson REMC contends that there is not substantial evidence to support the Commission's findings that PSI can serve Valle Vista with less expense than can Johnson REMC (Finding No. 14), provide more reliable service than Johnson REMC (Finding No. 15), and provide a plan of service which is more economically feasible than the plan of Johnson REMC (Finding No. 16).

The facts disclosed at the hearing reveal the following:

PSI planned to serve Valle Vista initially by building .6 mile of three-

phase circuit from its Greenwood substation south along Madison Avenue to Smith Valley Road, then east on Smith Valley Road approximately ¾ mile to Valle Vista. This line would be capable of supplying 14,000 KVA.

PSI also planned to build a new 20 MVA substation in the summer of 1975 to be constructed from its existing 69 KV line which runs parallel with the railroad west of Valle Vista. A new substation was needed regardless of whether PSI served Valle Vista because the existing Greenwood substation had reached its capacity and there was no additional land available at the existing substation for expansion. To serve Valle Vista, PSI need only use a larger size transformer and add one circuit position to the new substation at a total cost of $54,500.

At the time of the hearing, Johnson REMC had a three-phase line built to the corner of the Valle Vista development from which it was providing service to a Ramada Inn, two service stations and a gift shop. With certain upgrading this line will have a practical load limit of 3,500 kilowatts. However, it could be made to carry 5,500 kilowatts with the use of capacitors, at an annual cost of $29,000 for line losses.

Johnson REMC therefore requested a new delivery point from its electric supplier, Hoosier Energy Division of the Indiana Statewide REC. Such request was made due to the "increased demand east of Greenwood, Indiana, and the development around the I-65 interchange east of Greenwood." The request further stated that the projected load for the area would be 10,000 KW in ten years.

Hoosier Energy, in turn, requested that PSI provide a new delivery point approximately two miles east of Greenwood. The request specifically sought a delivery point "in either section 35 or 36, range 4 east, township 14 north, Johnson County, Indiana."

In order to provide this requested delivery point, PSI would have to build a 69 KV line along Greenwood Road, then out to a location avoiding the Interstate 65 interchange; Hoosier Energy would build a substation at this location; and Johnson REMC would then construct a three-phase circuit underbuild from that point back to Valle Vista.

The thrust of Johnson REMC's argument relating to the finding of cost to the respective utilities to provide service to Valle Vista involves

the cost comparison data introduced by PSI and which made certain assumptions regarding its service territory. The evidence disclosed that PSI had electric utility lines on the north side of the development, running east along Greenwood Road, then south into the development. PSI had obtained the consent of Johnson REMC to construct such distribution line into REMC territory and was granted a certificate of public convenience and necessity for such construction by the Commission on January 29, 1948, in Release No. 20295. The line was used to provide electrical service to a house.

PSI also have electric distribution lines along the west side of the Valle Vista development. Portions of this line were installed prior to the enactment of the Rural Electric Membership Corporation Act.[5] The line runs generally in a southeasterly direction. The line was extended on two different occasions in the 1940's pursuant to REMC Release No. 17138 and REMC Release No. 18395. These line extensions were likewise constructed to serve certain enumerated customers. PSI's cost data assumed a 750-foot corridor on either side of its lines, including the lines built to service customers enumerated in the various releases.

Johnson REMC contends that PSI does not have the right to serve future customers located within 750 feet of the line, and therefore its evidence relating to comparative costs are improper, citing *Public Serv. Co., Inc. v. Knox County Elec. Corp.* (1976), 170 Ind.App. 576, 354 N.E.2d 301 (transfer denied). However, even if we were to disregard these release lines, there is nevertheless substantial evidence of probative value upon which the Commission could have based its finding.

The upgrading of the three-phase line, which Johnson REMC is currently using to serve certain establishments within the development, would result in line losses of $29,000 annually. The cost of converting the three-phase line to 336 MCM line would be approximately $20,000. However, Joseph E. Mayes, a consulting engineer for Johnson REMC testified that such cost would have to be incurred regardless of whether it served Valle Vista. The cost of capacitors and regulators for the line rebuild would be approximately $16,000. Further, the cost of providing the requested delivery point for Johnson REMC in section 35 or 36 would

---

5. IC 1971, 8-1-13-1 *et seq.* (Burns Code Ed.).

be $334,300. Johnson REMC contends that this is not a proper considera-
tion in computing the cost of the respective plans of service because
it is Hoosier Energy's responsibility to provide Johnson REMC's
wholesale electric needs. Nevertheless, this does represent a real in-
vestment cost to implement the Johnson REMC plan of service.

On the other hand, the three-phrase line which PSI planned to build
from its existing substation to the development would cost approximate-
ly $34,000. Although PSI's planning engineer, M. Ray McCrary, testified
that this line would be built regardless of whether PSI served any REMC
portion of Valle Vista, it was apparently made with the assumption that
PSI had a 750-foot corridor on either side of its customer release lines.
The remaining load would be supplied by utilizing a larger size
transformer at its proposed substation and adding one circuit position
at a total increased cost of $54,500.

Thus, to transmit the electrical power to the development would cost
Johnson REMC a minimum of $334,300 and would cost PSI $88,500.

PSI estimated its cost of underground distribution of electrical power
within the development itself at $761,000;[6] REMC estimated its cost
of supplying an underground distribution system to be $642,000.
However, PSI's increased cost was based on different assumptions.
Johnson REMC projected an electrical load of 13 MVA for the Valle
Vista development; PSI projected a load of 27,000 KW or 27 MVA.
REMC's load projection included all the Valle Vista area except the in-
dustrial tracts. However, on redirect examination of Joseph Mayes,
evidence was elicited that a portion of the industrial tract area is within
the Greenwood city limits and, further, that the area was in proximity
to an existing PSI line that existed prior to 1925. PSI's projection in-
cluded 8,000 KW of power to serve the industrial tract.

The utilities also made different assumptions with respect to elec-
trical usage by the consumer. Johnson REMC assumed that one-half
of the square footage would be electrically heated. On the other hand,

---

6. Its estimated cost if both served their respective areas was $821,000. This data
assumed a 750-foot corridor on either side of its electric distribution lines, including the
customer release lines.

PSI assumed one-half of the residences would be total electric; all the apartments and condominiums would be total electric; and that the commercial areas, including the Ramada Inn and service stations, which REMC was presently serving, would utilize approximately 7,700 KW of power. PSI computed the load for the commercial areas based upon the average usage of its current commercial customer.

The Commission's function is to weigh this technical evidence, determine the validity and credibility of these various assumptions, and to view the cost estimates in relation to the assumptions. However, taking the assumptions at face value, the total cost to provide electrical service to Valle Vista would be $976,300 for Johnson REMC as compared to $849,400 for PSI. Thus, the Commission did not err in finding PSI could serve Valle Vista at less expense than could Johnson REMC nor that PSI's plan of service was more economically feasible.

There was also substantial evidence to support the finding that PSI could provide more reliable service than Johnson REMC.

The proposed substation which PSI planned to build immediately west of Valle Vista would be supplied with dual feed. The existing Greenwood substantion, as well as the Greenwood West and Greenwood North substations, would provide back-up capability to the proposed substation through a 12 KV distribution network. PSI also planned to provide two-way feed into Valle Vista, one source from the north on Greenwood Road and the other source from the west along Smith Valley Road.

In contrast, Johnson REMC could upgrade its present line to carry a load of 5,500 KW, but such service would result in line losses of $29,000 each year. Such line has a practical load limit of 3,500 KW.

Additionally, the electrical energy supplied to its requested delivery point would be a radial supply with no back-up of 12 KV. M. Ray McCrary testified that electrical service from the requested delivery point would not be as reliable as what could be provided by PSI. REMC's consulting engineer, Joseph Mayes, testified that Johnson REMC could not supply the Valle Vista area with two-way feed.

He further testified that two-way feed is highly desirable. However, its desirableness depends upon its availability, economic feasibility and

upon the number of people being served. A commercial customer especially would want two-way feed. Finally, he testified that none of the REMC's he worked with supplied two-way feed.

Appellant also attacks the Commission's finding concerning duplication of facilities and the confusion and inconvenience on the part of customers (Finding No. 7). In this respect Johnson REMC asserts that PSI and Johnson REMC are both serving in other subdivisions without such problems. There was evidence to the effect that PSI has a commercial office and servicemen located in Greenwood and that the office and crews of Johnson REMC are located approximately 10 miles away in Franklin, Indiana.

There was also testimony that if both PSI and Johnson REMC served the area, there would be inconvenience to the consumers of both utilities as well as operating and maintenance problems. Although there was evidence that the two utilities currently served other subdivisions, there was further evidence that such an arrangement did not constitute the best operating conditions and that it was not good for the customers. Consequently, there was sufficient evidence to support such finding.

Appellant next asserts that the Commission's findings concerning the financial ability of Johnson REMC to provide service to Valle Vista (finding No. 20) did not take into consideration the fact that the source of capital for REMC's is subsequently less expensive than the source of capital to PSI nor the fact that it would be as long as ten years before the development was fully completed. Such an attack is nothing more than an invitation to reweigh the evidence. However, it should be noted that the Commission was no doubt aware of the cost of capital to REMC's. And, although the development may not be completed for ten years, there was evidence that a large portion of the investment cost must be incurred within 3-4 years to install the main feeders.

Appellant finally contends that the order deprives Johnson REMC of property without just compensation. The order of the Public Service Commission provided, in part, as follows:

"IT IS FURTHER ORDERED that Petitioner offer to purchase from the Respondent the underground electric facilities of Respondent presently in place inside the Valle Vista development, at a

price representing the reproduction cost new less depreciation thereof, excluding only those facilities used to serve the motel, service station and gift shop located in the extreme northeastern portion of the development."

Appellant contends that an administrative agency has no common law or inherent powers, but only such authority as is expressly granted to it by statute, and such other powers as may be necessarily incident to the powers expressly granted.

*See*: 1 ILE, *Administrative Law & Procedure* § 21, at 163.

IC 1971, 8-1-13-18(b), *supra*, does not specifically authorize the Commission to order one utility to offer to purchase the facilities of another utility in place inside a service territory at the time an order is rendered. The question then becomes whether such power is necessarily incident to the Commission's power to issue a certificate of public convenience and necessity under the foregoing statute.

The problem arises as a consequence of the development occurring between the time the petition was filed and the Commission's order was issued. The order permitted Johnson REMC to continue to serve the area it was serving at the time of the hearing. Indeed evidence at the hearing revealed that this three-phase line would have to be converted to 336 MCM line to service its existing customers without regard to Valle Vista. Consequently, a large portion of the property for which Johnson REMC seeks compensation was installed between the time the hearing was held and the order issued.

When PSI filed its petition seeking a declaration of public convenience and necessity to serve in Johnson REMC territory, the REMC was put on notice that its service territory was in dispute. However, if we were to hold that either utility that offered service to the consumers in the area did so at its own risk, we would be fostering a situation of inaction. While this might resolve the conflict between the competing interests of the utilities involved, it would do so at the expense of the greater public interest. It would be in the public interest for electrical energy to be supplied by someone while the dispute is being resolved. This is

especially true in instances such as the case at bar where there is a long delay between the hearing and the order.

Nevertheless, the Public Service Commission is primarily a fact-finding body. It is without authority to enter a money judgment. *See*: *State ex rel. Indianapolis Water Co. v. Niblack, J.* (1959), 240 Ind. 32, 161 N.E.2d 377. The Commission is not generally considered to possess greater expertise than a court in determining matters of compensation for electrical facilities. *See*: IC 1971, 8-1-13-19 (Burns Code Ed.). This is true also on the issue of condemnation in general.

*See*: IC 1971, 32-11-3-1 *et seq.* (Burns Code Ed.);

IC 1971, 32-11-1-1 *et seq.* (Burns Code Ed.).

Its expertise in instances like the case at bar extends only to the granting or denying of a declaration of public convenience and necessity. Consequently, this portion of the Commission's order was outside its authority and must be set aside. However, if the parties cannot agree upon a proper solution of the matter, they may resort to the courts, whether it be an action for condemnation or other equitable proceedings, to resolve their dispute.

That portion of the order which required PSI to offer to purchase the facilities of Johnson REMC in place inside the development at the time the order was issued is vacated. The order is, in all other respects, affirmed.

Affirmed in part; reversed in part.

Staton, J. concurs.

Robertson, J., participating by designation, Concurs.

NOTE—Reported at 378 N.E.2d 1.