PUBLIC SERVICE COMPANY OF INDIANA ET AL. *v.*
CITY OF AURORA.

[No. 27,108. Filed February 20, 1939. Rehearing deniel
March 13, 1939.]

*Owen S. Boling, Evans & Hebel, Estal G. Bielby,* and
*Willard M. Dean,* for appellants.

*H. F. Denmure, Charles A. Lowe,* and *Crawford A.
Peters,* for appellee.

FANSLER, J.—This is an appeal from an order and
judgment of the Dearborn Circuit Court overruling the

appellants' objections to the appointment of appraisers in a condemnation proceeding by which the appellee seeks to purchase an electric utility, a water utility, and a gas utility owned by the appellants.

Most of the questions sought to be presented are decided adversely to appellants' contention . in *City of Lebanon* v. *Public Service Co. of Indiana et al.* (1938), 214 Ind. 295, 14 N. E. (2d) 719.

The only substantial question which it is necessary to decide involves the legality of the ballot submitted to the voters of the city in the election called for the purpose of submitting the question of the purchase of the properties under section 54-612 Burns' Ann. St. 1933, section 14029 Baldwin's Ind. St. 1934. The ballot was in the following language:

## "OFFICIAL BALLOT

"Do you favor the purchase and/or the condemnation and acquisition of the Electric, Water and Gas Utilities now owned, maintained and operated by The Public Service Company of Indiana within the City of Aurora, Indiana, and within six miles of the corporate limits thereof?

"(To vote in favor of the above mark an X, thus in the top square.)

" YES   For such proposal.

"(To vote against the above mark an X, thus in the bottom square.)

" NO   Against such proposal."

The appellants are the owners of three separate plants, an electric plant and distribution system, a water plant and distribution system, and an artificial gas plant and distribution system. The ballot required the voter to express himself upon the question of whether all or none of the utilities were to be purchased.

In the case of *Garrigus et al.* v. *Board of Com'rs of*

*Parke County* (1872), 39 Ind. 66, 72, 73, 74, 75, 76, this court had under consideration the validity of an election where the ballot submitted to the voters a proposal to vote for or against an appropriation to two railroad companies at the same time. It was pointed out that the solution of the question involved a construction of the statute under which the proceeding was had for the purpose of determining the legislative intention.

The appellants contend that the statute authorizes cities to purchase utilities, and that there must be a separate submission of the question of the purchase in respect to each separate utility property.

The appellee contends that the statute contemplates a proposal to purchase all of the property owned by a company operating public utilities, whether it be one or more utilities, and that, since the appellants owned and operated three different plants, the ballot is pursuant to the legislative intent.

Section 54-105 Burns' Ann. St. 1933, section 13905 Baldwin's Ind. St. 1934, defines the terms used in the Public Utilities' Law, and contains the following provisions:

"The term 'public utility' as used in this act shall mean and embrace every corporation, company, individual, association of individuals, their lessees, trustees, or receivers appointed by any court whatsoever, that now or hereafter may own, operate, manage or control any street railway or interurban railway or any plant or equipment within the state for the conveyance of telegraph or telephone messages, or for the production, transmission, delivery or furnishing of heat, light, water or power, or for the furnishing of elevator or warehouse service either directly or indirectly to or for the public, but said term shall not include a municipality that may now or hereafter acquire, own, or operate any of the foregoing facilities. . . .

"The term 'utility' as used in this act shall mean every street railway or interurban railway, and every plant or equipment within the state used for the conveyance of telegraph and telephone messages, or for the production, transmission, delivery, or furnishing of heat, light, water or power, or for the furnishing of elevator or warehouse service, either directly or indirectly to the public."

It is clear therefore that a "public utility" is the owner of one or more "utilities," and that a "utility" is the property or plant which furnishes service to the public.

Section 54-612 Burns' Ann. St. 1933, section 14029 Baldwin's Ind. St. 1934, provides that:

"No municipal council or municipality shall have the authority or power to condemn, lease, erect, establish, construct, purchase or acquire a public utility property unless the said condemnation, leasing, erecting, construction, purchase or acquisition shall have been submitted to and approved by the voters of said municipality, as hereinafter provided. . . .

". . . if said petition is to purchase, condemn, acquire or lease a public utility then operating in said municipality, said council shall submit to the voters of said municipality at a special election . . . the question whether such municipality shall purchase, condemn or construct and operate such utility, as the case may be. . . . If said petition is to purchase or condemn the property of an existing public utility, and a majority of the votes cast at such election on said proposal shall vote in favor of such proposal, then such municipal council shall adopt an ordinance declaring a necessity therefor. . . .

"In the event such municipal council and the owners of such utility are unable to agree upon a price to be paid by such municipality for such utility, such munici-

pality shall by ordinance, if it is so determined, declare that a public necessity exists for the condemnation of the property of such utility which such municipality has determined to acquire."

It is clearly apparent that the statute contemplates the purchase and acquiring of property, and not of the corporate entity which owns the property, and, ██ from the last sentence quoted, it seems clear that it was not contemplated that all of the property of the utility owner or "public utility' should be purchased. A "public utility" may be the owner of a street railway, an interurban railway, a telegraph plant, a telephone plant, a heating plant, an electric lighting plant, an electric power plant, a water plant, a plant for furnishing elevator service, and a plant for furnishing warehouse service, all within the same community. There is no reasonable basis for construing the statute as requiring that the municipality must acquire all or none of the property of such a "public utility." The act expressly provides that any municipality may condemn or purchase "any utility," and that, if it is determined to acquire "a utility," funds may be raised by a bond issue. The question submitted to the voters is whether the city shall purchase "such utility." The conclusion cannot be avoided that the purpose of the act was to permit cities to acquire utility properties which might be deemed useful, without respect to their ownership and without regard to whether the several utility properties in the community were owned by one or several owners. There is nothing in the act which can be construed as authorizing the city council to link two or more utility properties together, and require the voters to consent to the acquisition of all or none, and, since the law requires that a determination of the question of acquiring utilities shall be submitted to the voters, the only reasonable interpretation is that it was intended that the

voters should have a voice in determining the question as to each property.

In the Garrigus Case, *supra*, the court interpreted the statute as intending "that the voters of a county or township should have the privilege of voting for or against any proposition that might be submitted to them, without being compelled to vote for or against some other proposition that they would not have freely and of their own choice voted for." The opinion quotes from an Illinois case [*Bd. Suprs. Fulton Co.* v. *Mississippi & W. R. Co.* (1859), 21 Ill. 337, 373], involving a vote for or against subscriptions to two railroads, as follows:

"All elections, as well for measures as men, should be perfectly free, uninfluenced by any consideration, other than the merits of the individual man or measure proposed. We boast of the freedom of the elective franchise; should we not strive to swell the boast by its purity also? A single, isolated measure, such as a railroad, may not unite a majority of a county to whom it is proposed. It may favor, if constructed, one portion of a county more than another, and thereby be prevented from receiving a clear majority vote, such as the law clearly contemplates shall be given. Is it fair, in order to accomplish this object, to attach another measure to it, to be voted on at the same time, which may benefit the opposing portion of the county? The law never intended that two roads should be coupled together, and the people forbidden to vote for one if they did not also vote for the other, the one road being really a bribe offered for votes for the other. The truth is, the voters of Fulton have never had an opportunity to vote, and never have voted this subscription, for the question was at no time distinctly before them."

And from a decision of the Supreme Court of Iowa [*McMillan* v. *Lee Co. and Boyles, Judge* (1856), 3 Ia.

311, 319], the following language, from a case involving a similar question, is quoted:

"We have said that in our opinion, the law contemplates unity and distinctness in the question authorized to be submitted, in contradistinction to the uniting of several questions in the same proposition, or the incumbering of any proposition with conditions not required or not permitted by the statute. The proceedings coming under our notice in this cause present a most forcible illustration of the wisdom of what we deem to have been the policy of the statute. The people were not called upon, nor were they permitted, to decide by their votes whether the county of Lee should borrow money for one purpose or object. No single question was submitted to their votes to be decided upon its own merits, or by the judgment of the people in its favor. Nor were three propositions submitted at once, to be voted upon and to be decided upon, either singly or in the aggregate. No question submitted was permitted to stand by itself, or to take effect upon the decision of the people in its favor. On the contrary, while it is contained in the proposition, that a majority of the votes cast in favor of the subscription to the stock of either company, should be considered its adoption by the people, it is also further contained and declared, 'that the said subscription shall not be made to either of said companies, unless the vote shall be carried in favor of each and all of them.'

"We cannot regard this in any other view than as an attempt to impose a condition upon the taking effect of the vote of the people adopting a proposition submitted to them, wholly unauthorized by the law. They were entitled to have the question of the county taking stock in either of these railroad companies submitted to their decision, unincumbered by any such condition or proviso. To make the success of any one proposition depend upon the adoption of all, was to take from the expres-

sion of the will of a majority of the people that essential validity intended by the law to be imparted to it."

The reasoning applies here. Many of the voters may have been highly interested in acquiring the gas plant, and indifferent or mildly opposed to acquiring the other plants. They may have considered that it was advantageous for the city to acquire the gas plant even at the disadvantage of acquiring the other two plants also. Other groups of voters may have had the same attitude respecting each of the other two plants. We must conclude that the statute intends that the voter shall have a choice as to each utility property. It seems clear that there would be no contention to the contrary if the three utilities were owned by three different owners. The fact that they are the property of the one "public utility" cannot alter the situation. The question submitted must be the same in one case as the other.

It is deemed advisable to call attention to the use of the oft-condemned "and/or" in the ballot.

In view of our conclusion, it was error to appoint appraisers.

Judgment reversed.

Roll, J., absent.